596 P.2d 695

STATE of Arizona, Appellee,

v.

Steven Lee TULIPANE, Appellant.

No. 4527.

Supreme Court of Arizona,
In Banc.

May 31, 1979.

Rehearing Denied June 26, 1979.

John A. LaSota, Jr., former Atty. Gen., Robert K. Corbin, Atty. Gen. by William J. Schafer, III, Barbara A. Jarrett, Asst. Attys. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by John F. Foreman, Deputy Public Defender, Phoenix, for appellant.

STRUCKMEYER, Vice Chief Justice.

Steven Lee Tulipane was convicted and placed on probation for the commission of two criminal offenses. His probation was revoked and he appeals. Affirmed.

The petition to revoke the probations was filed on February 21, 1978. It alleged that appellant violated the terms and conditions of his probations by using a narcotic, morphine, while incarcerated in Maricopa County Jail. After a protracted hearing, appellant was adjudged in violation of the terms and conditions of his probation and sentenced to two concurrent terms in Arizona State Prison. He argues that the trial court erred when it admitted certain hearsay evidence offered by the State and refused to admit certain hearsay evidence that he offered at the hearing.

■ Rule 27.7(b)(3), Arizona Rules of Criminal Procedure, 17 A.R.S., provides that a probation "violation must be established by a preponderance of the evidence" and that "[t]he court may receive any reliable evidence not legally privileged, including hearsay."[1] The trial court is allowed reasonable discretion in determining the admissibility of evidence, and such discretion will not be disturbed on appeal unless it has been clearly abused. *State v. Macumber*, 119 Ariz. 516, 582 P.2d 162 (1978); *State v. Mosley*, 119 Ariz. 393, 581 P.2d 238 (1978).

On May 17, 1978, counsel for appellant received permission from the trial court to have his client released from the county jail in order to take a polygraph examination. The court at that time stated that no evidence from the test would be admissible at the revocation hearing unless the State so stipulated. The prosecutor refused to stipulate to the admissibility of the results. On May 26, 1978, appellant filed a motion requesting the court to rule that the results of the polygraph examination be admitted into evidence. The motion was denied. Appellant argues that the court's refusal to allow the polygraph results into evidence was error.

■ We discussed the reliability of polygraph examinations in *State v. Treadaway*, 116 Ariz. 163, 169, 568 P.2d 1061, 1067 (1977):

" * * * we believe the polygraph report of the Committee on Government Operations of the United States House of Representatives is persuasive concerning the insufficient reliability of polygraph technology.

'Although there is indication that efforts are being made to upgrade the training and educational requirements of polygraph operators, the committee finds that unproven technical validity of the polygraph devices themselves makes such efforts a meaningless exercise.' Committee on Government Operations, The Use of Polygraphs and Similar Devices by Federal Agencies, H.R. Rep. No. 795, 94th Cong., 2d Sess. 46 (1976)."

---

1. Rule 1101(b), Arizona Rules of Evidence, 17A A.R.S., provides that the rules apply "to criminal cases and proceedings except as otherwise provided in the Arizona Rules of Criminal Procedure." The State argues that the "reliable" standard for the admissibility of hearsay evidence of Criminal Rule 27.7(b)(3) is a different standard than enunciated in Rule 803 of the Rules of Evidence. We disagree. " * * * the word reliable * * * is synonymous with trustworthy and thus connotes that type of dependency which underlies the generally recognized exceptions to the hearsay rule." *State v. Brown*, 23 Ariz.App. 225, 231, 532 P.2d 167, 173, *approved* 112 Ariz. 29, 536 P.2d 1047 (1975). The standard set forth in Rule 803(24), Arizona Rules of Evidence, provides that hear-

say which is not otherwise excepted or excluded from the hearsay rule may be admitted, even where the declarant is available, if it has "equivalent circumstantial guarantees of trustworthiness" to the other exceptions to the hearsay rule and

"if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts, and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence."

*See also* Rule 804(b)(5).

Considering the inherent unreliability of polygraph examinations, we find that the trial court did not abuse its discretion when it refused to admit the results of appellant's test.

Appellant in his brief points to *State v. Goodloe*, 107 Ariz. 141, 483 P.2d 556 (1971), where we held that the trial court, in its discretion, could properly consider polygraph results in probation revocation proceedings. We do not think, however, that *Goodloe* stands for the proposition that the trial court must consider polygraph results in making its determination.

■ On February 7, 1978, urine samples were collected from all the inmates in appellant's pod at the Maricopa County Jail after one of the inmates was hospitalized for an apparent drug overdose. The samples were sent to St. Luke's Hospital. After appellant's probation officer received a laboratory report from the hospital indicating that there was morphine in appellant's urine sample, a petition to revoke probation was filed.

Appellant urges that the laboratory report was unreliable hearsay and was improperly admitted in evidence. We have, however, addressed this contention before. See *State v. Rivera*, 116 Ariz. 449, 569 P.2d 1347 (1977); *State v. Flores*, 26 Ariz.App. 400, 549 P.2d 180 (1976); *State v. Brown*, 23 Ariz.App. 225, 532 P.2d 167, *approved* 112 Ariz. 29, 536 P.2d 1047 (1975). In all of the foregoing cases, it was held that hospital laboratory reports similar to the one in the present case were reliable hearsay under Rule 27.7.

Appellant argues that the present case is distinguishable since he presented evidence controverting the accuracy of the urinalysis report while the defendants in the cited cases failed to do so.

He attacks the reliability of the report by showing that the identification number next to his name, 338802, was not his identification number, but, rather, was the booking number of one Terry Lee Skibbie. Appellant's identification number was 338082.

■ An examination of the record indicates that the identification number on the report must have been a clerical error, a juxtaposition of digits. Skibbie had been released from the correctional facility in 1977. Moreover, the officers who obtained the urine samples testified that the prisoners' names, not their identification numbers, were taped on the sample jars that were submitted to the hospital. The positive test result was entered on the same line as appellant's name on the hospital report. The clerical error in transposing the numbers did not make the report unreliable.

The appellant also submitted as an exhibit the March 1975 edition of the Pharm-Chem Newsletter, entitled "Drug Dynamics and the Interpretation of Urinalysis Data." The authors of that tract state that after codeine use, the person's liver will convert some of it to morphine, and the person's urine will test positive for morphine even though only codeine was taken. As to this, the supervising nurse at the detention center testified that the medical personnel "don't give anything with codeine at the main jail."

Although appellant has raised a question concerning false positive results in urinalysis testing in general, he has not offered any positive evidence which controverts the reliability of the report in the instant case. For example, Donald Lee Peyton, Director at the Terros Detox Service, a drug abuse agency, testified that his agency stopped using St. Luke's Hospital for urinalysis reports approximately four and one-half years prior to the revocation hearing. When he was asked by appellant's counsel for the reasons, an objection was sustained by the court. Appellant's counsel told the court Peyton would testify that Ellis Humphrey, a former director of the agency, stopped using the hospital for urinalysis testing after he submitted samples which were incorrectly tested.

■ We agree with the Superior Court in its ruling. As a minimum there should have been a foundation that St. Luke's Hospital was using the same testing procedures as used four and one-half years earlier. Inaccuracies four and one-half years ago do

not establish that appellant's urinalysis was faulty. Moreover, we do not think that Peyton's testimony had "equivalent circumstantial guarantees of trustworthiness" as the other exceptions to the hearsay rule enunciated in Rule 804, Rules of Evidence, so that it can be considered reliable hearsay. The failure to admit Peyton's testimony was not an abuse of discretion. Since appellant failed to impeach the reliability of the urinalysis, the trial court could predicate its decision to revoke appellant's probation on that evidence.

Affirmed.

CAMERON, C. J., and HAYS, HOLOHAN and GORDON, JJ., concur.