644 P.2d 889

**STATE of Arizona, Appellee,**

v.

**Scott Jay WILLIAMS, Appellant.**

No. 5276.

Supreme Court of Arizona,
In Banc.

March 26, 1982.

Rehearing Denied May 11, 1982.

Robert K. Corbin, Atty. Gen., William J. Schafer III, Chief Counsel, Criminal Division, Gerald R. Grant, Asst. Atty. Gen., Phoenix, for appellee.

McCarthy & Sandman by Cary Sandman, Tucson, for appellant.

GORDON, Vice Chief Justice:

Appellant, Scott Williams, was convicted of three counts of dangerous or deadly assault by a prisoner, for which there is a required sentence of life imprisonment. A.R.S. § 13–1206.[1] Appellant was sen-

---

1. "A.R.S. § 13–1206. Dangerous or deadly assault by prisoner

"A person, while in the custody of the department of corrections, a law enforcement agency or county or city jail, who commits an

tenced to three terms of life imprisonment to be served concurrently. Appellant challenges the convictions. We have jurisdiction pursuant to Ariz.Const. Art. 6, § 5(3), and A.R.S. § 13–4031.

"D tank" is a distinct part of Pima County Jail which houses high security risks and disciplinary problems. The tank contains a number of small cells lined along a narrow corridor called a run. The opening and closing of cells is controlled electronically. There are no windows in D tank. The inmates housed there spend 23 hours a day in their cells and are permitted one hour in the exercise yard. Sanitary conditions are very poor in D tank. Many of the cells do not have operative toilet facilities. Jail administrators admit that mentally deranged persons are confined in the tank. The mentally ill inmates sometimes beat on their bars and yell throughout the night, spread feces over the walls of their cells, and throw urine and feces into the run.

There is constant tension in D tank due to the living conditions. The inmates react antagonistically toward the prison personnel who in turn treat the inmates poorly. The behavioral patterns of the "mentally healthy" inmates degenerate and these prisoners engage in deviate conduct.

On the evening of June 23, 1981 the inmates of D tank, complaining that the food was cold, threw food and trays into the run. During a late exercise hour some of the prisoners drank homemade alcohol with no objection from detention officers. Later in the evening a prisoner, Meronek, wishing to relieve himself, requested permission to use the toilet facilities. A corrections officer opened the cell and noticed that Meronek was walking stiffly. Meronek had a broken broom handle down a leg of his pants. Even though Meronek volunteered to surrender the stick, the officer insisted that he, and not Meronek, retrieve the stick and a struggle ensued. The normally high ten-

sion level in D tank intensified. The inmates, incensed by the officer's perceived brutality against Meronek, began to break the few remaining commodes off of cell walls and to throw sheets and blankets into the run and set them afire. When detention officers attempted to enter the smoke-filled tank they were pelted with pieces of porcelain. The fire department was called to the jail and fire hoses were used to soak down the run and all the cells. To quell the disturbance and insure prisoner safety the decision was made to remove all prisoners from the tank. A SWAT (Special Weapons and Tactics) team arrived on the scene with dog units. Cells one through five were opened individually and the prisoners removed without incident. Appellant's cell, number six, was mistakenly opened prematurely, and appellant ran to the far end of the corridor. To protect himself from the prospect of dog bites appellant had wrapped his upper torso and head in wet blankets. As appellant ran down the corridor another inmate handed him a broken broom handle with a jagged, pointed end. Brandishing the stick appellant turned to face the approaching four member SWAT team. The team advanced slowly and at one point was stopped because a prisoner, still in his cell, poked a stick at them causing a neck injury to one of the officers. During this time appellant would advance down the corridor toward the officers jabbing his stick at them and then retreat again. All of appellant's blows hit the officers' shields, and no SWAT team member was injured by appellant. The remaining cellmates shouted encouragement to appellant as he yelled to officers to send down the dogs so he could kill them. The firefighters turned their hoses on appellant knocking him to the floor. Once again the officers advanced and reaching appellant attempted to subdue him. There is conflicting testimony whether at this point appellant continued to

assault using or exhibiting a deadly weapon or dangerous instrument or who intentionally or knowingly inflicts serious physical injury upon another person is guilty of a felony and upon conviction shall be sentenced to life imprisonment and shall not be eligible for suspension or

commutation of sentence, probation, parole or release on any other basis until such person has served not less than twenty-five years. A sentence imposed pursuant to this section shall be consecutive to any other sentence presently being served or imposed upon the defendant."

struggle or tried to protect himself against the blows of the officers. The evidence is in agreement that appellant sustained head injuries and was bitten several times by the dogs, once in the face. Two officers were also bitten by the dogs during the chaos. Appellant was dragged out of D tank and hog-tied in the outer area, the sally port, where he lay bleeding until he was taken to Kino Hospital for medical attention.

## INSTRUCTION ON SELF-DEFENSE

■ Appellant contends the trial court erred in instructing the jury that he did not have a right to self-defense and he therefore was deprived of due process.

On appeal appellant denies engaging in assaultive actions. The state posits that appellant cannot deny involvement in any assaultive behavior yet argue that he had a right to a self-defense instruction. The state's proposition of law is correct. Appellant's position contains an obvious contradiction and simple logic demands that a "defendant who disclaims any assaultive behavior on his part is not entitled to a self defense instruction." *State v. Miller*, 129 Ariz. 42, 43, 628 P.2d 590, 591 (App.1981). This proposition, however, is not dispositive in this case because of the facts before us. Although appellant denies attempting to hit an officer he admits striking at the shields of the officers with his stick. These actions do constitute assaultive behavior, but without more do not preclude the giving of a self-defense instruction.

The trial judge did not explain on the record why a self-defense instruction was not available to appellant. The judge may have thought that the force used against appellant was lawful as a matter of law and therefore there was no right to the use of self-defense. In the absence of a clear expression of the reasons for instructions we cannot speculate as to why a trial court acted a certain way. This lack of clarity, however, does not hamper our analysis. Even if the officers had employed *unlawful* physical force appellant still is not entitled to a self-defense instruction under the facts of this case. A.R.S. § 13–404.

Appellant argues that a reasonable person would have believed repellant force was necessary to protect himself against the advancing SWAT team members. Section 13–404(A) permits the use of necessary force to protect oneself from unlawful force. We, however, do not have to determine if appellant's behavior was reasonable because he provoked the use of force against him by participating in the disturbance. A.R.S. § 13–404(B)(3). Appellant admits ripping his commode from the wall, throwing procelain, and setting fires. The Legislature has determined that one who provokes another's use of force cannot claim self-defense unless the provoker "withdraws from the encounter or clearly communicates to the other his intent to do so reasonably believing he cannot safely withdraw from the encounter." A.R.S. § 13–404(B)(3)(a). There are no facts in the record before us that indicate that appellant withdrew from the disturbance or that he attempted to communicate a withdrawal before the assault had occurred. Appellant, wrapped in wet blankets and armed with a pointed stick, ran down the tank corridor and turned to face the officers. There is no evidence that before assaulting the officers appellant attempted to communicate a withdrawal from the altercation. Appellant did not call out or indicate by any physical act that he wished to be taken out peacefully. Appellant testified that he was afraid and understandably so; but in the absence of any facts constituting a withdrawal appellant was not justified in using force against the officers. Had the defense presented evidence satisfying all of the elements of A.R.S. § 13–404, even if this evidence was in complete conflict with the state's evidence, appellant would have been entitled to an instruction on self-defense. *Everett v. State*, 88 Ariz. 293, 356 P.2d 394 (1960).

Appellant's contention that it was the conditions of the jail, and not he and other inmates, which provoked the riot is a novel argument. Appellant admits being personally involved in the disturbance. This Court will not deny that severe overcrowd-

ing at the Pima County Jail affects prisoners retained there. We cannot, however, say these conditions and not the appellant provoked the disturbance.

A trial court is not under any obligation to give a requested instruction not warranted by the evidence presented in the case. *State v. Reinhold*, 123 Ariz. 50, 597 P.2d 532 (1979); *State v. Denton*, 101 Ariz. 455, 420 P.2d 930 (1966). The trial court did not err in instructing the jury appellant had no right to claim self-defense.

## INSUFFICIENCY OF THE EVIDENCE

Appellant contends that the trial court erred in failing to grant his motion for a directed verdict of acquittal arguing that there was insufficient evidence to warrant a conviction. We disagree.

On appeal from a conviction an appellate court considers the evidence in the light most favorable to sustaining the verdict. *State v. Gracia*, 121 Ariz. 417, 590 P.2d 1363 (1979), and resolves all reasonable inferences in favor of the state. *State v. Acree*, 121 Ariz. 94, 588 P.2d 836 (1978).

Members of the SWAT team were issued protective apparel consisting of face and riot shields, helmets, and chest protectors. The protective gear was worn during the disturbance. Appellant asserts that the stick he used against the officers was not a dangerous instrument [2] because it was not readily capable of causing death or serious physical injury [3] under the circumstances.

Viewing the evidence in the light most favorable to upholding the jury's verdict we do not agree with appellant's conclusion. Appellant armed himself with a three-foot long pointed stick. Appellant jabbed at the officers as they approached him. One officer suffered neck injuries inflicted by a prisoner wielding a stick much like appellant's. Another deputy lost his riot shield

during the struggle. A pathologist, Dr. Froede, testified that a pointed stick could inflict serious physical injury in spite of the protective gear worn by the officers. Although appellant did not injure any officer, A.R.S. § 13–1206 does not require an actual infliction of an injury.

Appellant would have us hold as a matter of law that the protective gear rendered the SWAT team members immune from serious injury. We will not do so. It was within the province of the jury to determine if the implement appellant used was a dangerous instrument. "[A] reviewing court in a criminal case does not weigh the evidence to decide whether it would reach the same conclusion as the trier-of-fact." *State v. Acree*, 121 Ariz. 94, 96, 588 P.2d 836, 838 (1978). The jury found the stick to be a dangerous instrument under the circumstances and we cannot say as a matter of law that the weight of the evidence is contrary to the verdict.

## PRECLUDED TESTIMONY OF BEATINGS OF PRISONERS

Appellant urges us to find the trial court committed reversible error by precluding evidence of other prisoners being beaten when they were taken from D tank to the sally port area. Defense counsel attempted to show that after some inmates were removed from their cells they were hog-tied and beaten. The trial court ruled that this evidence was not admissible. The court did, however, permit evidence of what happened to appellant when he was taken from D tank.

The admissibility of evidence is within the discretion of the trial court and these decisions will not be disturbed on appeal in the absence of a clear abuse of discretion. *State v. Tulipane*, 122 Ariz. 557, 596 P.2d 695 (1979); *State v. Macumber*,

---

2. A.R.S. § 13–105(7): " 'Dangerous instrument' means anything that under the circumstances in which it is used, attempted to be used or threatened to be used is readily capable of causing death or serious physical injury."

3. A.R.S. § 13–105(29): " 'Serious physical injury' includes physical injury which creates a reasonable risk of death, or which causes serious and permanent disfigurement, or serious impairment of health or loss or protracted impairment of the function of any bodily organ or limb."

119 Ariz. 516, 582 P.2d 162, *cert. denied*, 439 U.S. 1006, 99 S.Ct. 621, 58 L.Ed.2d 683 (1978); *State v. Sturgis*, 113 Ariz. 311, 553 P.2d 665 (1976).

Appellant posits that evidence of events in the wake of the disturbance is relevant to show his state of mind as he dashed out of his cell. His state of mind, appellant suggests, was probative of his feeling that he had to defend himself from possible unlawful police action. The court ruled pretrial that evidence of other prisoners being beaten was inadmissible because it was not material or relevant to the issues of the trial. The determination of the relevancy of the evidence at the pre-trial stage of the proceedings may have been premature. Regardless of this, if the preclusion of the evidence was error, it is harmless in light of our holding that appellant was not entitled to a self-defense instruction.

In the alternative, appellant argues that even if evidence of the beatings was not admissible on direct examination, it should have been admitted on redirect in order to rehabilitate a defense witness.

■ A prisoner, Gluth, testified for the defense and referred to a report written on the jail disturbance by Detective Haller. Gluth did not tell Haller about any beatings and the report makes no mention of them. The prosecutor, on cross-examination, intimated that Gluth had fabricated the story of beatings before trial. Appellant asserts that not admitting further testimony on the beatings in the sally port denied him the right to effectively rehabilitate his witness. We disagree.

We reiterate that evidentiary rulings will not be disturbed on appeal absent an abuse of discretion. *Macumber, supra; Sturgis, supra.* "The court is given wide discretion in controlling the scope of examination, even cross-examination." *State v. Youtsey,* 116 Ariz. 527, 529, 570 P.2d 214, 216 (App. 1974).

The trial court did not abuse its discretion. Witness Gluth was adequately rehabilitated by defense counsel. Gluth admitted

that although he had showed his stitches to the detective he may not have told him about the beatings and that the report did not include all they had discussed. The suggestion that Gluth had fabricated the story was adequately rebutted.

Nor is it error that the trial court limited the testimony of defense witness Ashworth, another prisoner. Ashworth's testimony was confined to events involving appellant, the court having previously determined that the officers' treatment of other prisoners was irrelevant. As noted previously this evidence would have been relevant had appellant satisfied the self-defense statute, A.R.S. § 13–404. Because appellant was not entitled to a self-defense instruction, excluding testimony on other prisoners' treatment was not reversible error.

## LIMITED CROSS–EXAMINATION

Appellant contends that the exclusion of evidence concerning events outside of D tank denied him effective cross-examination of Detective Haller.

■ An accused's sixth amendment right to confront adverse witnesses is made obligatory on the states through the fourteenth amendment. The right to confront embodies the right to cross-examine witnesses. *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).

Arizona is committed to the policy of permitting wide latitude in the scope of cross-examination to comport with the confrontation right. *State v. Dunlap,* 125 Ariz. 104, 608 P.2d 41 (1980). The right of cross-examination, however, is not without limitation. The control of all examination is within the sound discretion of the trial court. *Youtsey, supra.*

"[T]he defendant does not have the unrestricted right to cross-examine adverse witnesses on any matter desired. Initially the cross-examination must be shown to be relevant. The determination of relevancy is within the discretion of the trial court."

*Skinner v. Cardwell,* 564 F.2d 1381, 1388 (1977), *cert. denied,* 435 U.S. 1009, 98 S.Ct. 1883, 56 L.Ed.2d 392 (1978).

■ The court ruled that occurrences outside of D tank not involving appellant were not material or relevant and prevented cross-examination on these matters. Only if cross-examination has been *unreasonably* limited will an appellate court overturn a trial court's determination to limit the scope. *See State v. Dunlap, supra.* In effect much of this information was before the jury, despite the court's ruling. Defense counsel questioned witnesses about the treatment of other prisoners in the sally port and elicited responses numerous times before objections could be made. We find that the restriction on cross-examination was not unreasonable and there was no abuse of discretion.

## INSTRUCTION ON JAIL CONDITIONS AS A DEFENSE

■ Appellant appeals to this Court to find that the trial court committed reversible error by instructing the jury that conditions at Pima County Jail were not a defense to the charge of dangerous assault by a prisoner. Appellant failed to object to the instruction and in fact at one point during the trial stated that the defense was "not offering the conditions in the jail for that, [a defense to the assault]." Appellant now asks this Court to find fundamental error because the instruction commented on the evidence, unduly emphasized certain evidence, and was an incorrect statement of the law. We decline to so find.

Our state constitution requires that "[j]udges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law." Ariz. Const. Art. 6, § 27. This provision prohibits judges from commenting on the evidence. "The word comment as used in the constitutional provision has been construed to mean the expression of an opinion." *State v. Barnett,* 111 Ariz. 391, 393, 531 P.2d 148, 150 (1975); *accord, State v. Willits,* 96 Ariz. 184, 393 P.2d 274 (1964). We do not construe the instruction in question as expressing an opinion. The instruction addressed a matter of law, not fact. There is no violation of Ariz.Const. Art. 6, § 27. Nor does the instruction unduly emphasize particular evidence to the exclusion of the balance of evidence.

Appellant next argues that the instruction was an incorrect statement of the law. We disagree. This Court has approved instructions stating that conditions of imprisonment do not justify escape from incarceration. *State v. Mulalley,* 126 Ariz. 278, 614 P.2d 820 (1980); *State v. Alberigo,* 109 Ariz. 294, 508 P.2d 1156 (1973).[4] Appellant's position is weaker than those of the petitioners in the escape cases. There is far less appeal in finding inadequate facilities a defense to assault than a defense to escape. This Court repeats that there are serious problems in the prison system in this jurisdiction and others. *See generally United States v. Bailey, supra,* note 4 (Blackman, J., dissenting). We cannot, however, condone an assault because of poor jail conditions. There is sound policy in so holding. As futile as it may seem to appellant there are administrative and judicial channels open to air grievances. Further we cannot approve of the use of violence as an acceptable means of demonstrating dissatisfaction with prison facilities.

The jury heard extensive testimony on the conditions at Pima County Jail. The instruction did not preclude the jury from weighing this evidence in considering appellant's motive for his actions but stated as a matter of law it could not constitute a legal defense to dangerous assault by a prisoner.

We find no error in the instruction.

4. The United States Supreme Court has addressed the issue of poor conditions in penal institutions as being a defense to escape. *United States v. Bailey,* 444 U.S. 394, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980). Although finding no evidence to support the defense of duress or necessity the Court indicated that conditions could be a valid defense if the fugitive makes a bona fide effort to return to custody at the earliest safe opportunity.

## EXPERT TESTIMONY

 Appellant finally contends that the trial court erred in permitting expert testimony on the dangerous nature of the stick.[5] Appellant argues that permitting expert testimony was error because persons of ordinary education could determine if the stick was dangerous, the testimony was irrelevant, and the expert could not determine if the stick was dangerous "under the circumstances"[6] because he had not heard all the prior testimony. We do not agree.

The prosecution called Dr. Froede as an expert witness on the type of injuries that could be inflicted by a sharpened stick. Appellant's motion to preclude the testimony was denied. Dr. Froede testified as to the injuries a stick could cause, pointed out vulnerable parts of the body, and then gave his opinion that appellant's stick could have caused "serious physical injury"[7] in spite of the officers' protective gear.

 Expert testimony is permitted when the subject is beyond the common experience of most persons and the opinion of an expert will assist the trier of fact. Ariz.R.Evid. 702. If the matter, however, is of such common knowledge that persons of ordinary education and background could reach as intelligent a conclusion as an expert, the testimony should be precluded. *State v. Dickey*, 125 Ariz. 163, 608 P.2d 302 (1980); *State v. Mosley*, 119 Ariz. 393, 581 P.2d 238 (1978); *State v. Salazar*, 27 Ariz. App. 620, 557 P.2d 552 (1976). It is within the trial court's discretion to permit expert testimony, and this decision will not be disturbed unless the discretion was abused. *Dickey, supra, Mosley, supra.*

Dr. Froede assisted the trier of fact by explaining the vulnerability of the neck area. The officers' necks were not protected by the gear. The doctor diagrammed the neck area indicating the jugular vein. This information is a matter of special knowledge and is beyond the expertise of most laypersons. Admitting the expert testimony to assist the jury was within the sound discretion of the trial court.

Although we may agree that Dr. Froede's testimony was unnecessarily lengthy and technical, we decline to find it irrelevant. The question whether the stick was a dangerous instrument was the precise question the jury had to determine to render a verdict under A.R.S. § 13–1206.[8]

 Appellant's final argument that the doctor, not having sat through the trial, should not have given his opinion that the stick was dangerous under the circumstances has no merit. The expert viewed the protective gear and the stick. An expert is permitted to give an opinion, Ariz.R.Evid. 703, even if it involves the ultimate issue in the case. Ariz.R.Evid. 704. The expert testimony was properly admitted. It was for the trier of fact to weigh the testimony and within its province to reach its own conclusion on the dangerous nature of the instrument.

Pursuant to A.R.S. § 13–4035 we have reviewed the record on appeal and find no error. We affirm the judgment of guilt and sentence.

HOLOHAN, C. J., and HAYS, CAMERON and FELDMAN, JJ., concur.

---

5. See note 2, *supra.*

6. See note 2, *supra.*

7. See note 3, *supra.*

8. See note 1, *supra.*