139 Ariz. 117 (1983)
677 P.2d 280
STATE of Arizona, Appellee,
v.
Arlie Ray ROBERTS, Appellant.
No. 1 CA-CR 5959.
Court of Appeals of Arizona, Division 1, Department B.
September 27, 1983.
Reconsideration Denied November 16, 1983.
Review Denied January 24, 1984.
*118 Robert K. Corbin, Atty. Gen. by William J. Schafer, III, Chief Counsel, Crim. Div. and Greg A. McCarthy, Asst. Atty. Gen., Phoenix, for appellee.
*119 Ross P. Lee, Maricopa County Public Defender by H. Allen Gerhardt, Deputy Public Defender, Phoenix, for appellant.
OPINION
GREER, Judge.
Defendant Roberts was indicted by the Maricopa County Grand Jury on two counts of aggravated assault and one count each of child molestation, sexual abuse, and burglary in the second degree. Following a jury trial, the defendant was found guilty of two counts of aggravated assault. He was sentenced to concurrent prison terms of two and one-half years and seven and one-half years. In reversing the guilty verdicts and remanding for a new trial, we discuss the following two issues on appeal:
(1) Whether the trial court erred by denying defendant's request for a transcript of the in camera examination of the victim's competency; and,
(2) Whether the court erred by denying defendant's request to introduce expert testimony of a psychologist to impeach the victim's credibility.
The facts necessary to a resolution of this matter are as follows. The victim (referred to as Miranda for ease of discussion), a mildly retarded nine year old girl, was living with her older sister, Linda Garcia, in Garcia's mobile home. On September 6, 1981, Garcia left Miranda with a babysitter while she went shopping. Defendant, who was the babysitter's boyfriend, allegedly made two separate visits to the mobile home. On the second visit he allegedly assaulted Miranda. The babysitter did not testify at trial. Based upon Miranda's testimony and her two separate statements to police officers, it appears the defendant threw her against the wall of the mobile home, threatened her with a knife, and forced her to take her clothes off. It was also alleged that he touched her private parts. Miranda sustained a bloody nose and an injury to her knee as a result of the altercation with the defendant. The defendant admitted entering the trailer one time, but denied assaulting Miranda. He called several alibi witnesses at trial, partially accounting for his whereabouts on the date in question.
IN CAMERA EXAMINATION
Pursuant to the defendant's motion for a mental examination, two psychologists were appointed to examine Miranda. Both Dr. Donald Tatro and Dr. Northcutt Cox found her mildly retarded. However, although Dr. Cox found her competent to testify at trial, Dr. Tatro concluded that she was incompetent to testify. In order to assist him in determining whether Miranda was in fact competent to testify, the trial judge questioned Miranda in his chambers without the presence of counsel. Defense counsel had previously advised the court that he had no objection to the in camera examination, but reserved the right to question Miranda at a later date. After the in camera questioning, both counsel questioned the victim. Questioning was limited by the court to matters that had not been covered during the in camera examination. At the conclusion of counsel's questioning, the court ruled that Miranda was competent to testify. Defendant thereafter requested a transcript of the in camera proceedings, purportedly for use in cross-examining Miranda at trial. The court denied the request, reasoning that the defendant had use of the preliminary hearing transcript, and concluded it would be inappropriate to release a copy of the in camera transcript.
On appeal, the defendant claims his right to equal protection of the law was violated because he was denied a free transcript of the in camera proceeding. The defendant's reliance on Britt v. North Carolina, 404 U.S. 226, 92 S.Ct. 431, 30 L.Ed.2d 400 (1971) and State v. Tomlinson, 121 Ariz. 313, 589 P.2d 1345 (App. 1978), is misplaced. In Britt, the United States Supreme Court relied on Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1955), and its progeny in holding that equal protection requires the state to provide an indigent defendant with the basic tools of an adequate defense on appeal *120 when those tools are available for a price to other prisoners. The court's decision to deny the defendant's request in the instant case, however, was not based upon an inability to pay for the transcript. Thus, neither Britt nor Tomlinson is applicable to the instant case.
The defendant also claims that the court's decision denied him his right to due process of law, to confront witnesses, and to effective assistance of counsel. Generally speaking, whether a criminal defendant is entitled to discover certain evidence is a matter within the trial court's discretion. See Zarate v. Jennings, 17 Ariz. App. 401, 498 P.2d 475 (1972). As a matter of fundamental fairness, "justice dictates that the defendant be entitled to the benefit of any reasonable opportunity to prepare his defense and to prove his innocence." State v. Superior Court, 103 Ariz. 465, 468, 445 P.2d 441, 444 (1968) (emphasis in original). Defendant seemingly argues that he was entitled to a transcript of the in camera proceedings as a matter of law. We do not reach this issue, however, because our review of the transcript leads us to conclude that the defendant's defense was not affected by the unavailability of the transcript. Thus, any error committed was clearly harmless and will not justify a reversal. State v. Lawrence, 123 Ariz. 301, 599 P.2d 754 (1979).
We also reject defendant's contention that he was deprived of his right to confront witnesses. The primary objective of the Sixth Amendment's Confrontation Clause is to prevent depositions or ex parte affidavits from being used against the defendant in lieu of the witness testifying. Douglas v. Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965); State v. Jerousek, 121 Ariz. 420, 590 P.2d 1366 (1979). The accused must have the opportunity of compelling the witness "to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief." Douglas v. Alabama, 380 U.S. at 419, 85 S.Ct. at 1077, 13 L.Ed.2d at 937.
Miranda did testify in court against the defendant. Moreover, the record discloses that defendant's counsel conducted extensive cross-examination of Miranda. Thus, because defendant was allowed to both confront and cross-examine her, his rights to confront his accusers were not unduly restricted. See State v. Jerousek.
Finally, as we have already stated, the trial court's decision did not in any way affect the defendant's trial preparation. We have reviewed the record and conclude that the defendant was not denied effective assistance of counsel.
EXPERT TESTIMONY REGARDING THE VICTIM'S CREDIBILITY
At trial, the defendant sought to call Dr. Tatro, the psychologist who had concluded that Miranda was incompetent, for purposes of impeaching Miranda's credibility. As an offer of proof counsel relied mainly upon Dr. Tatro's psychological report, originally submitted for purposes of determining Miranda's competency to testify. Dr. Tatro's report was based upon a series of psychological tests, including the Bender Visual Motor Gestault Test, the House-Tree-Person Test, the Make-a-Picture Story Test, and the Wechsler Intelligence Scale for children. The results of the tests showed that Miranda had an I.Q. of sixty-five, indicating a mental deficiency. In his report, Dr. Tatro stated that the test results were consistent with the probability that Miranda has an "organically-based learning disability" which severely limits her verbal intellect. In support of his conclusion that she would probably not be a competent or reliable witness, Dr. Tatro reported that Miranda had a clearly defective memory, that her verbal ability was so limited that she could not understand any but the simplest of questions, that she was capable of and had during testing given answers to questions she did not understand, and was unusually preoccupied with fantasies of hostility and violence. He concluded by stating that he would be even more concerned about the reliability of her *121 testimony because of her preoccupation with ideas that men and women hurt each other. Defense counsel emphasized to the court that it was very important for the jury to know the results of the drawing tests administered by Dr. Tatro because they were consistent with those obtained from children four or five years younger than Miranda, indicating that her mental age was actually four or five years, compared to her chronological age of nine years.
In opposing the motion, the state advised the court it would offer in rebuttal the testimony of a learning disability resource teacher who had tested Miranda on a number of occasions and would conclude that she did not have a tendency to fantasize.
The trial court offered a number of reasons in support of its denial of the defendant's motion. Initially, the court noted that a witness' competency is a legal question which need not be submitted to the jury. It also reasoned that the jury would have an adequate basis from listening to Miranda's testimony to determine whether she was telling the truth. It also stated that expert testimony was simply not proper in this type of case. Finally, the court concluded that even if the testimony was relevant, the prejudicial effect would outweigh any probative value because the testimony would confuse the jury and distract them by emphasizing a collateral issue.
Initially, it is important to distinguish between Miranda's competency to testify and her credibility as a witness. Competency has to do with a witness' capacity to observe, recollect and communicate the subject of the testimony. A.R.S. § 12-2202 specifies that children under ten years of age may not be witnesses if they appear incapable of receiving just impressions of the facts respecting which they are to testify or relating them truthfully.[1] Whether a witness is competent to testify is a legal matter solely within the discretion of the trial court. State v. Jerousek, supra; State v. Peeler, 126 Ariz. 254, 614 P.2d 335 (App. 1980).
Credibility, on the other hand, is a matter for the jury. It raises the question of the reliability of a witness' testimony. Put in another way, it questions whether the witness' testimony does in fact accurately reflect what took place. In determining credibility a number of factors are questioned, including the witness' veracity, bias, and perception and memory of the particular event (as opposed to perception and memory in general). A witness may be deemed competent to testify but not very credible, or vice versa. See State v. Jerousek.
Perhaps the seminal case in this field is the noted decision of United States v. Hiss, 88 F. Supp. 559 (S.D.N.Y. 1950). There, as here, the defendant sought to introduce expert testimony to discredit the government's key witness, Whittaker Chambers. Holding evidence of insanity or mental derangement to be admissible to impeach Chamber's credibility, the court stated that such evidence not only went to the preliminary question of competency but also to the jury question of credibility. We agree. In the instant case, although the court had already determined that Miranda was not incompetent because of her low I.Q., her mental deficiency was also a factor relevant to her credibility.
The readily apparent principle raised by this issue is one that has long been recognized in Arizona; that the jury should be informed of all matters which may in the slightest degree affect a witness' credibility. State v. Trotter, 110 Ariz. 61, 514 P.2d 1249 (1973); Fuller v. State, 23 Ariz. 489, 205 P. 324 (1922); see also Watts v. Golden Age Nursing Home, 127 Ariz. 255, 619 P.2d 1032 (1980). The issue is complicated by the countervailing rule of law that the trial judge is afforded a great deal of discretion in determining whether to admit expert testimony under Rule 702, Ariz.R. of Evid. State v. Williams, 132 Ariz. 153, 644 P.2d 889 (1982); State v. Fendler, 127 Ariz. 464, 622 P.2d 23 *122 (App. 1980), cert. denied 452 U.S. 961, 101 S.Ct. 3108, 69 L.Ed.2d 971 (1981).
In considering a similar evidentiary issue, our supreme court recently set forth four requirements for the admission of expert testimony regarding eyewitness observations: (1) the expert must be qualified; (2) there must be a proper subject; (3) the expert's opinions must have been made in conformity with a generally accepted explanatory theory; and, (4) the probative value of the expert's testimony must outweigh its prejudicial effect. State v. Chapple, 135 Ariz. 281, 660 P.2d 1208 (1983). Although Chapple is not on point factually, the four part test is nonetheless applicable to the admission of the expert testimony in the instant case. The state challenges neither the qualifications of the expert herein nor the theory upon which his opinion is based. Thus, we need only consider two of the four criteria elucidated in Chapple.
(1) Proper subject.
Expert testimony is permitted under Rule 702 if it "will assist the trier of fact to understand the evidence or to determine a fact in issue." More precisely, the question is not whether the jury could reach some conclusion in the absence of the expert evidence, but whether the jury is qualified without such testimony "to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject." State v. Chapple.
Our supreme court has recognized that expert medical testimony might be admissible to impeach a witness' credibility in appropriate cases. In State v. Wahrlich, 105 Ariz. 102, 459 P.2d 727 (1969), the defendant was charged with committing lewd and lascivious acts upon a six year old girl. The trial court denied the defendant's motion for a mental examination of the victim. The supreme court affirmed the trial court's decision because of the abundance of corroborative evidence and the defendant's admitted participation in the crime. Nonetheless, the court went on to state that, "[i]n some instances psychiatric testimony might be extremely helpful in resolving the credibility of the prosecuting witness as in sex cases." Id. at 106, 459 P.2d at 731. See also State v. Piatt, 132 Ariz. 145, 644 P.2d 881 (1981) (affirmed trial court's denial because it was doubtful the defendant's psychiatrist would have helped the jury to better evaluate the witness' credibility); State v. Tamplin, 126 Ariz. 175, 613 P.2d 839 (App. 1980) (also affirmed trial court's denial because the defendant's offer of proof was insufficient).
In the instant case, the defendant's offer of proof challenged the witness' memory, perception, ability to understand questions, likely veracity under the facts of this case, and overall reliability. As we stated previously, the offer of proof was based upon a series of test results which showed an organically based learning disability and an unusual preoccupation with fantasies of hostility and violence, including ideas that men and women hurt each other.
It is quite possible a jury, might, without guidance from an expert witness, determine that a particular witness has a problem understanding questions from the examining attorneys, or has a problem recalling certain events. But, it is not as likely the same jury would, based solely on the witness' testimony, perceive that the witness might fabricate answers because of an unusual preoccupation with fantasies of hostility and violence. We are of the opinion that the jury would have been in a much better position to determine Miranda's credibility if it had been aided by expert testimony. Thus, Miranda's credibility was a proper subject for expert testimony in this case.
(2) Probative value versus prejudicial effect.
The trial court found that the prejudicial effect of Dr. Tatro's testimony would outweigh its probative value. Rule 403, Ariz.R. of Evid., provides for the exclusion of relevant evidence if its probative value is substantially outweighed by its *123 prejudicial effect. The weighing and balancing under Rule 403 is a matter within the sound discretion of the trial court, and will not be disturbed on appeal unless a clear abuse of discretion is shown. State v. Clark, 126 Ariz. 428, 616 P.2d 888 (1980), cert. denied, 449 U.S. 1067, 101 S.Ct. 796, 66 L.Ed.2d 612 (1980); see also State v. Williams, 132 Ariz. 153, 644 P.2d 889 (1982). Because the trial judge is in a much better position to make a Rule 403 determination, his decision will stand in the vast majority of cases. See State v. Chapple. However, all facts considered, it is our opinion the court clearly abused its discretion in the instant case.
We recognize, as have other courts, that there are many dangers inherent in such testimony:
The psychiatric testimony may not be relevant; the techniques used and theories advanced may not be generally accepted; the psychiatrist may not be in any better position to evaluate credibility than the juror; difficulties may arise in communication between the psychiatrist and the jury; too much reliance may be placed upon the testimony of the psychiatrist; partisan psychiatrists may cloud rather than clarify issues; the testimony may be distracting, time-consuming and costly.
Ballard v. Superior Court, 64 Cal.2d 159, 49 Cal. Rptr. 302, 312, 410 P.2d 838, 848 n. 10 (1966) (citing Juviler, Psychiatric Opinions as to Credibility of Witnesses: A suggested approach, 48 Cal.L.R. 648 (1960); Comment Psychiatric Evaluation of the Mentally Abnormal Witness, 59 Yale L.J. 1324 (1950). The risk of these dangers must be weighed against the long standing rule favoring the admission of evidence bearing on a witness' credibility.
In the instant case, the state contends that undue confusion would have resulted from conflicting opinions given by the defense and state's expert witnesses. This risk is, of course, encountered in every case in which expert testimony is offered by opposing parties. It does not necessarily follow that the jury will always be more confused by the testimony than if it were not assisted at all. The identical issue was considered by the Colorado Supreme Court in People v. Schuemann, 190 Colo. 474, 548 P.2d 911 (1976). In that case the court ruled that the difference of expert opinion should not foreclose the admissibility of an otherwise qualified expert where the witness' testimony was crucial to the outcome of the case. Accord United States v. Partin, 493 F.2d 750 (5th Cir.1974) (psychiatrist should have been permitted to give his opinion as to witness' mental condition and weight of testimony should have been left to jury); Hawkins v. State, 326 So.2d 229 (Fla.App. 1976) (reversible error not to admit psychiatrist's testimony that witness' mental condition would affect her propensity to tell truth where court could not say within a certainty that the jury would have reached the same conclusion had the testimony been allowed); People v. Bastian, 330 Mich. 457, 47 N.W.2d 692 (1951) (reversible error to refuse medical testimony that prosecutrix's credibility was very poor where, if believed, the jury might have acquitted the defendant).
It is clear that the outcome of the case at bar rested solely on Miranda's testimony. Where the testimony of a witness is so crucial in determining whether a defendant may or may not be imprisoned, and the offer of proof so substantial as in this case, we feel the value to the jury of expert testimony far exceeds any confusion which might have been caused by the difference of expert opinion or the delay in having two extra witnesses testify.
Our decision is buttressed by the record in the instant case. In its opening statement, the state warned the jury to be patient with Miranda's testimony because she would be nervous and had a problem with the English language. Her testimony must have been quite confusing to the unsuspecting jury, however. At one point, for instance, the defendant's attorney asked Miranda to name two or three months. She replied by naming the days of the week. Her testimony was filled with many other similar answers that *124 would confuse an unsuspecting jury. And, in closing argument defendant's attorney emphasized the many inconsistencies and gaps in Miranda's testimony. It is clear that an injustice was done by not fully informing the jury about Miranda's condition.
Having determined that the trial court abused its discretion by excluding the expert testimony, we must determine whether the defendant was prejudiced thereby. "Error is prejudicial unless it can be said beyond a reasonable doubt that the jury would have convicted even in the absence of error at the trial level." State v. Chapple, 135 Ariz. at 297, 660 P.2d at 1224; State v. Malloy, 131 Ariz. 125, 639 P.2d 315 (1981). We are unable to conclude beyond a reasonable doubt that the jury would have convicted the defendant had Dr. Tatro been permitted to testify and must therefore reverse the court's judgment.
In light of our resolution of this matter, we need not address the final issue raised by the defendant. Accordingly, the judgment of the trial court is reversed and this matter remanded for further proceedings consistent with this opinion.
GRANT, J., concurs.
FROEB, Presiding Judge, dissenting:
In my opinion there is seldom any compelling reason for allowing a psychiatric expert to state an opinion at trial concerning the credibility of another witness. On the other hand, there are compelling reasons for disallowing it, many of which are adverted to in the majority opinion. The Arizona Supreme Court, in the few instances the question has been raised, has held that the matter rests in the discretion of the trial court. See, for example, State v. Wahrlich, 105 Ariz. 102, 459 P.2d 727 (1969); State v. Piatt, 132 Ariz. 145, 644 P.2d 881 (1982). Cf. State v. Chapple, 135 Ariz. 281, 660 P.2d 1208 (1983). In my opinion the trial court in the present case did not improvidently exercise its discretion in disallowing psychiatric testimony concerning the victim's credibility. I would therefore affirm the conviction.
NOTES
[1] A.R.S. § 12-2202 is made applicable to criminal proceedings pursuant to A.R.S. § 13-4061.