STATE OF NORTH CAROLINA v. JAMES L. McNEILL

No. 7612SC1006

(Filed 1 June 1977)

1. Searches and Seizures § 2— warrantless search of apartment — authority of lessee to give consent

   The lessee of an apartment who paid the rent was a person authorized to give consent to a search of the premises, including a bedroom which she shared with defendant, even though defendant occasionally gave her money which she used to pay the rent. G.S. 15A-222(3).

2. Criminal Law §§ 75.10, 75.15— confession — voluntariness — defendant not under influence of drugs

   Evidence was sufficient to support the trial court's findings that defendant was advised of and waived his rights before voluntarily and understandingly making statements to the police and that defendant was not under the influence of drugs and understood what he was doing when he made the statements, and such findings will not be disturbed on appeal.

3. Criminal Law § 40.2— motion for free transcript — denial not prejudicial

   Defendant was not prejudiced by the denial of his motion for a free transcript of evidence at his first trial which ended in a mistrial where such denial did not limit his ability to cross-examine one witness concerning her identification of defendant and her identification of the gun allegedly used in the commission of the crime; furthermore, defendant could have subpoenaed the court reporter who took the transcript at the first trial to testify from her notes at his second trial, but he elected not to do so.

**4. Criminal Law § 40.2— retrial of indigent after mistrial — transcript provided defendant**

    If the State intends to retry an indigent defendant after a mistrial, the defendant, upon his timely request, should be provided with the effective use of the trial transcript.

APPEAL by defendant from *Herring, Judge.* Judgment entered 1 July 1976 in Superior Court, CUMBERLAND County. Heard in the Court of Appeals 4 May 1977.

Defendant was indicted and convicted of armed robbery. Judgment was entered imposing a prison term of 30 years.

*Attorney General Edmisten, by Associate Attorney James E. Scarbrough, for the State.*

*Carter & Cogswell, by Robert C. Cogswell, Jr., for defendant appellant.*

VAUGHN, Judge.

Defendant's first assignment of error is that the trial court erred in denying his motion to suppress the introduction of the shotgun that was seized as a result of a search of a room occupied by defendant on 18 December 1975. Defendant's contention on this issue is twofold. He first argues that Margaret Smith was not in a position to give a valid consent to the search of the room within which he was residing on the date of the search and wherein the sawed-off shotgun was discovered by police officers. His second argument against the admission of the shotgun into evidence at his trial is, assuming that there was not a valid consent given to search the apartment, the search and seizure of the item was actually made incidental to his arrest and as such any search should have been limited to the immediate vicinity or control of defendant and beyond that area the police officers were bound by the "plain view doctrine."

[1] During the pre-trial hearing on defendant's motion to suppress the shotgun, evidence for the State tended to establish the following: Margaret Smith, the lessee of the apartment at which defendant was residing, testified that she leased and paid the rent on the apartment in question. Defendant did give her money from time to time which she used to pay the rent, and he had been living with this witness for approximately three weeks. On the morning of 18 December 1975, the police came

State v. McNeill

to her apartment and at her invitation they entered the premises. The police asked her if she knew the defendant. By this time defendant had come into the living room and the police asked him for some identification. The police officers asked defendant to be seated in the living room and requested that Miss Smith step into the kitchen for further questioning. She told the police that she had seen a shotgun in the apartment a few weeks earlier, and that she had requested the defendant to remove it from the premises. The police after ascertaining that she paid the rent and had leased the apartment, requested and received her permission to search the apartment. During this search the shotgun was found in the bedroom shared by defendant and the witness.

Defendant offered evidence tending to show that he had on occasion given Margaret Smith money to pay the rent and other household expenses and that it was his understanding that he had exclusive control over the bedroom that he shared with Miss Smith and that she could only enter the room without first obtaining his permission in order to get her clothing that was stored therein.

Based on this evidence the trial judge made the appropriate findings of fact and concluded as a matter of law:

"That the sawed-off shotgun found under the bed in a bedroom at 2106 Arthur Street, Apartment D, on December 18, 1975, in the City of Fayetteville, North Carolina, was discovered as a result of a search by a police officer with the permission and consent of the lessee of the apartment who was a person reasonably apparently entitled to give consent, and was in fact entitled to give or withold consent to a search of the premises, and was not a search incident to an arrest."

Because there is competent evidence to support the findings of fact and conclusion of law set forth above, they are conclusive on appeal. Margaret Smith was a person authorized to give consent to a search of the premises. G.S. 15A-222(3).

[2] Defendant's second assignment of error is that the trial judge erred in denying his motion to suppress all incriminating statements made by him, both oral and written, after his arrest on 18 December 1975. Defendant made an oral statement on the morning of 18 December 1975 to the effect that on Wednesday,

10 December 1975, a Thomas Whitley came to the apartment where defendant was staying and stated that he didn't have any money. Whitley asked if defendant had a gun and defendant told him that he was holding a weapon for someone else. Defendant stated that it was Whitley's idea to rob the Little Giant on Pamalee Drive that night. Defendant thought it over and decided to participate. They went to the Little Giant and waited outside until the customers left. When the clerk on duty went to the back of the store, they went inside and opened the cash register. At this point the clerk came back. Whitley held a gun on the clerk while they emptied the cash register. Before they left the store they put the clerk in the storage room. After they divided the money, they went their separate ways. Defendant took the shotgun back to Margaret Smith's apartment. Defendant's handwritten statement tends to corroborate the oral statement but defendant refused to sign a typewritten version. Defendant testified that he did not deny making the statements but that he was under the influence of drugs when he made them.

In his brief, defendant contends that since there was "just as much sufficient evidence to support those findings not entered by the Court as there . . . [was] to support those findings entered by the Court" then the trial court could have just as easily rendered "a finding that the statement was involuntary just as easily as the Court rendered its opinion that the statement was voluntary." This contention has no merit. Following a properly conducted voir dire hearing on the admissibility of defendant's in-custody statements, the court found facts with respect to defendant being fully advised of and waiving his rights and concluded that he freely, knowingly, voluntarily waived his rights and made statements to the police. The court found that defendant was not under the influence of drugs and that he understood what he was doing when he made the statements. The trial court's findings are supported by competent evidence, and will not be disturbed on appeal. *State v. McAllister*, 287 N.C. 178, 214 S.E. 2d 75.

[3] During defendant's first trial, it appears that his grandmother tried to talk with several of the jurors and persuade them that defendant was not guilty. Thereafter, defendant moved for a mistrial and the motion was allowed. On the same day he moved for a free transcript of the testimony given by Mary Henry, the clerk in the store where the robbery occurred,

and Detective Pearson, one of the investigating officers. The motion was denied. The denial of that motion is the subject of defendant's third assignment of error.

It has long been settled that, as a matter of equal protection, the State must provide indigent defendants with the basic tools of an adequate defense on appeal, when they are available for a price to other defendants. "While the outer limits of that principle are not clear, there can be no doubt that the State must provide an indigent defendant with a transcript of prior proceeding when that transcript is needed for an effective defense or appeal." *Britt v. North Carolina,* 404 U.S. 226, 30 L.Ed. 2d 400, 92 S.Ct. 431. In *Britt* the Court again considered two factors it had previously deemed relevant in determining whether the transcript was needed for an effective defense (1) the value of the transcript to the defendant in connection with the appeal or trial for which it is sought, and (2) the availability of alternative devices that would fulfill the same functions as a transcript.

The only argument defendant advances on appeal to sustain his contention that he was prejudiced is that it limited his ability to cross-examine the witness, Mary Henry. In his brief he says that the only reason he requested the transcript was for the purpose of impeaching her as to her identification of defendant and her identification of the gun.

With respect to Mary Henry's identification of defendant as being one of the robbers, the thrust of defendant's cross-examination was that the witness had failed to identify defendant in a lineup conducted about two weeks after the robbery. At both trials, Mary Henry frankly admitted that she could not identify defendant as being anyone she had seen in a lineup. At both trials she said that if she had ever seen defendant in a lineup she did not recognize him. We have examined the record of both of the transcripts that defendant brings forward and conclude that there was nothing more that defendant could have elicited on that point if he had had the first transcript. We must note also that, although defendant testified in his own behalf, he offered no evidence that he was ever placed in a lineup. There was no evidence from either the State or the defendant that defendant was in a lineup viewed by Mary Henry.

Defendant's counsel also cross-examined the witness about her identification of the shotgun. While being examined by the State at the first trial, the following took place:

"Q. What type of gun was it?

A. It appeared to be a shotgun.

MR. COGSWELL: Objection. Move to strike.

COURT: Overruled.

Q. Can you describe the shotgun?

A. Well, I was very frightened and I'm not sure that I can describe the gun. I mean I'm just not sure."

At the second trial defendant cross-examined the witness as follows:

"Q. Mrs. Henry, do you recall testifying previously in this matter that you couldn't identify that gun when you saw it in the previous matter?

A. (pause)

Q. You being here previously and testifying?

A. No.

Q. You were shown that gun but you said you couldn't identify it, do you recall that?

MR. ANDERSON: Objection.

COURT: Overruled.

A. No, sir.

Q. You don't recall sitting on that stand and saying I'm not sure that I can identify that gun?

A. I don't remember whether I said that or not, I mean it's similar.

Well, I mean I only saw it for a few seconds. He had the gun. I can't be absolutely sure. I didn't have my hands on that gun, he did. I have seen the gun once before I came here and testified and now. The second time I have seen it was here today."

State v. McNeill

Again, we fail to see how defendant's cross-examination could have been aided by a transcript.

The mistrial was ordered on 19 May 1976. Defendant was called for trial on the same charge on 1 July 1976. He was tried before the same judge and was represented by the same attorney. In his brief he admitted that the court reporter who took the transcript at the first trial could have been subpoenaed and called to testify from her notes at his second trial. Almost the same circumstances existed in *Britt* except that in that case the Court noted that the court reporter was friendly with the lawyers and would have read his notes to counsel well in advance of trial if counsel had requested him to do so. Our record is silent on what the court reporter might have done in advance of trial. Defendant well knew, however, that he could call the reporter to testify and elected not to do so. We conclude that the record before us affirmatively discloses that the transcript was not needed for an effective defense of the defendant at his second trial. Moreover, if there was error in the denial of the motion, it was harmless beyond a reasonable doubt and does not require a new trial.

It is our notion, however, that this is one of those rare cases where, after the fact, an appellate court can determine with certainty, that there was no prejudice in the denial of a transcript of the first trial. The utility of a transcript needs no explanation to those lawyers whose abilities are tested regularly in the crucible of a trial courtroom.

[4] Free transcripts are now routinely provided for indigents in order to allow them to prepare for the direct appeals to which they may be entitled as a matter of right. In the event of a new trial, the State and the defendant have had the benefit of that transcript. We see no reason why the same routine should not also be followed in the relatively few instances where a mistrial has been ordered. The benefits of the availability of a transcript of the first trial, to the State as well as the defendant, are manifest. No longer should the appellate courts be called upon to consider the casuistic arguments advanced to justify the absence of what has come to be a common tool in preparation for an appeal or retrial. Henceforth, if the State intends to retry an indigent defendant after a mistrial, the defendant, upon his timely request, should be provided with the effective use of the trial transcript.

Defendant has brought forward a number of other assignments of error. All of them have been carefully considered. We conclude that they fail to disclose prejudicial error.

No error.

Chief Judge BROCK and Judge CLARK concur.