589 P.2d 1345

**The STATE of Arizona, Appellee,**

**v.**

**Charles Ellie TOMLINSON, Jr., Appellant.**

**No. 2 CA–CR 1422.**

Court of Appeals of Arizona, Division 2.

Dec. 12, 1978.

Rehearing Denied Jan. 10, 1979.

Review Denied Jan. 30, 1979.

**314**

John A. LaSota, Jr., Atty. Gen., by William J. Schafer, III, and Gerald R. Grant, Asst. Attys. Gen., Phoenix, for appellee.

David P. Tiers, Tucson, for appellant.

## OPINION

HOWARD, Judge.

At a second trial appellant was found guilty by a jury of forcible rape and sentenced to not less than ten nor more than 15 years in the Arizona State Prison. He presents two questions for review. Did the trial court err when it denied his request for a free transcript of the prior trial? Did the trial court err when it allowed the state to introduce into evidence a written transcript of a tape-recorded interview with the appellant? We believe the trial court erred in denying the transcript and reverse.

The first trial, which commenced on December 8, 1977, ended the next day when the trial judge declared a mistrial after the jury was unable to reach a verdict. The only witnesses who testified were the victim, Detective Middleton and the appellant. At the most, the victim's testimony under direct and cross-examination consumed a period of one and one-half hours. Prior to the first trial the state, pursuant to Rule 15.1, 17 A.R.C.P., had provided appellant's counsel with, inter alia, reports of the incident made by the victim to Officer Steve Ritchie and Det. Middleton, pictures of the victim's torn underpants and the victim's signed statement concerning the incident.

On December 19, 1977, appellant's court-appointed attorney, who had represented him at the first trial, made a motion for a free copy of the trial transcript on the grounds that he needed it to properly review the testimony of all the witnesses and to have it available for impeachment purposes. No authority in support of the motion was cited to the court.

On December 29, 1977, the trial court set the case for trial on January 10, 1978. On January 3, 1978, appellant's motion for the free transcript was heard by the trial court. While observing that the trial was only a week away and that there might be some problem in transcribing the testimony from the first trial, the trial court denied the motion for two reasons: (1) There was no legal authority for furnishing the transcript and (2) appellant had not shown any specific reasons why he needed it at that time. However, the court did state in its order denying the motion:

"... if there is some phase of the testimony that Defense counsel may feel to be contradictory, the Motion for trial transcript may be given consideration at that time."

At the second trial appellant was represented by the same counsel who represented him at the first trial and the official court reporter who was reporting the trial was the same one who reported the first trial. During cross-examination of the victim a discussion ensued as to what the victim meant when she testified that appellant "ripped off" her jeans and her panties and whether she had given the same testimony at the first trial. Appellant, in the middle of cross-examination, moved for a copy of the transcript of the first trial for impeachment purposes. The court made no ruling. Defense counsel resumed the cross-examination. From the questions asked by defense counsel it appears there was some question as to whether the victim had changed her testimony from the first trial concerning who had turned off the interior lights or the headlights of appellant's automobile after the rape and whether her parents cared when she got home. Defense counsel then renewed his request for the transcript. The court denied it. When counsel was permitted to make a record on his request for the transcript, he stated he needed it because of "gross inconsistencies" between the victim's testimony at the first trial and her present testimony. He did not

particularize as to the nature of these "gross inconsistencies". The trial court again stated that it knew of no legal authority for providing the transcript and that it would unduly delay the trial to have the transcript or some portion of it prepared. Again, neither counsel offered any legal authority to the court to aid it in its ruling.

The right of an indigent to a free transcript of his prior trial was decided in the case of *Britt v. North Carolina*, 404 U.S. 226, 92 S.Ct. 431, 30 L.Ed.2d 400 (1971). In *Britt*, the petitioner's three-day murder trial ended in a mistrial when the jury reported a hopeless deadlock. A retrial was scheduled for the following month. In the interim the petitioner filed a motion alleging he was an indigent and asked for a free transcript of the first trial. The trial court denied his motion. The issue was whether this denial violated petitioner's rights to equal protection under the Fourteenth Amendment to the United States Constitution. The Court held that under the narrow circumstances of the case a transcript was not needed for the petitioner's defense. However, in so ruling, the Court set down certain principles:

"*Griffin v. Illinois* [351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956)] and its progeny establish the principle that the State must, as a matter of equal protection, provide indigent prisoners with the basic tools of an adequate defense or appeal, when those tools are available for a price to other prisoners. While the outer limits of that principle are not clear, there can be no doubt that the State must provide an indigent defendant with a transcript of prior proceedings when that transcript is needed for an effective defense or appeal." 92 S.Ct. at 433.

The Court identified two factors as relevant in determining the need for a transcript: (1) The value of the transcript to the defendant in connection with the appeal or trial for which it is sought and (2) the availability of alternative devices that would fulfill the same functions as the transcript.

The Court also discussed the failure of the petitioner to make a particularized showing of need:

"We agree with the dissenters that there would be serious doubts about the decision below if it rested on petitioner's failure to specify how the transcript might have been useful to him. Our cases have consistently recognized the value to a defendant of a transcript of prior proceedings, without requiring a showing of need tailored to the facts of the particular case. As Mr. Justice DOUGLAS makes clear, even in the absence of specific allegations it can ordinarily be assumed that a transcript of a prior mistrial would be valuable to the defendant in at least two ways: as a discovery device in preparation for trial, and as a tool at the trial itself for the impeachment of prosecution witnesses." (Footnote omitted) 92 S.Ct. at 434.

The trial court in *Britt* had rested its decision on the second factor in the determination of need, that is, the availability of adequate alternatives to a transcript. It appeared that the second trial was before the same judge with the same counsel and same court reporter and that the two trials were only a month apart. The trial court suggested that the petitioner's memory and that of his counsel should have furnished an adequate substitute for a transcript. Furthermore, the court pointed to the fact that the petitioner could have called the court reporter to read to the jury the testimony given at the mistrial, in the event that inconsistent testimony was offered at the second trial. The Court in *Britt* rejected this as an inadequate alternative.

"We have repeatedly rejected the suggestion that in order to render effective assistance, counsel must have a perfect memory or keep exhaustive notes of the testimony given at trial. Moreover, we doubt that it would suffice to provide the defendant with limited access to the court

reporter during the course of the second trial. That approach was aptly rejected as 'too little and too late' in *United States ex rel. Wilson v. McMann*, 408 F.2d 896, 897 (CA2 1969)." (Footnote omitted) 92 S.Ct. at 434.

The reason the Court affirmed the conviction in *Britt* was because at oral argument it was shown that the trial took place in a small town where, according to petitioner's counsel, the court reporter was a good friend of the local lawyers and was reporting the second trial. It further appeared that the reporter would at any time have read back to counsel his notes of the mistrial, well in advance of the second trial, if counsel had simply made an informal request. The court stated:

"A defendant who claims the right to a free transcript does not, under our cases, bear the burden of proving inadequate such alternatives as may be suggested by the State or conjured up by a court in hindsight. In this case, however, petitioner has conceded that he had available an informal alternative which appears to be substantially equivalent to a transcript."

In *Britt* the court concluded that under the "narrow circumstances" of the case there was no violation of equal protection. The federal courts which have had occasion to rule on the subject have pointed out the importance of the petitioner's concession in *Britt*. Thus, in *United States v. Young*, 472 F.2d 628 (6th Cir. 1972) the court held that there was error in denying appellant a transcript of the prior trial. There, appellant's first trial ended on December 8, 1971. On December 15, 1971, he moved for a transcript of his first trial. The motion was not ruled on until the start of the second trial, at which time his motion was denied. Three months later the trial court, in granting a motion for a transcript on appeal, commented on its denial of the transcript at the outset of the second trial. It stated that the two trials were just two weeks apart, defense counsel was the same and

the court reporter was available to read back at any time any portion of the first trial that might have been requested. The appellate court held that the trial court erred because unlike *Britt*, appellant's counsel had not conceded that he had an informal alternative. Furthermore, the record did not reflect that the trial court made any reference to the availability of the court reporter to read back his notes until three months after the trial. In addition, the motion for transcript was not ruled upon until the opening of the second trial. Thus at best appellant had only limited access to the reporter during the course of the second trial.

In *United States v. Acosta*, 495 F.2d 60 (10th Cir. 1974) the appellate court held there was error in denying appellant's motion for a transcript of his first trial, pointing out that, contrary to the situation in *Britt*, counsel for the appellant asserted that the court reporter would not read back his notes free of charge.

In *United States v. Jonas*, 540 F.2d 566 (7th Cir. 1976), after a motion for a new trial was granted, the case was transferred to two other federal defender attorneys who requested that the trial court authorize preparation of the transcript of the first trial without cost to the defendant. The defendant did not seek the entire transcript but limited his request to the portions containing the testimony of the witnesses who testified at the first trial. The government did not object to the request. The court denied defendant's motion, noting that the court's notes during the first trial would be made available to defendant's attorneys and, further, that the court reporter's tape recordings of the first trial would be "available for listening and for impeachment purposes". Following the denial, defense counsel did listen to the tape recording prior to retrial. He renewed his motion during the second trial suggesting there were inconsistencies in testimony of the government witnesses at the first trial and that given by them at the second trial. The court

again denied the motion, stating that portions of the first trial could be transcribed if, after again listening to the tape recording, the defendant could show a "particularized need for a transcript" and could point to "material variations" between testimony at the second trial and that given at the first trial.

The appellate court held it was reversible error to deny the motion. It stated that the tape recordings did not allow counsel to adequately prepare for the second trial and were not an adequate substitute for a transcript for purposes of impeachment,[1] noting the mechanical difficulties in trying to impeach a witness with a tape recording. It also stated that the judge's suggestions during trial that upon a showing of particularized need the reporter's tapes might then be available for transcription was an example of "too little too late".

In *United States v. Mullen*, 550 F.2d 373 (6th Cir. 1977) the court held that the fact that the reporter at the first trial would be available and his notes could be read for impeachment purposes at the second trial was inadequate.

In *United States v. Talbott*, 454 F.2d 1111 (8th Cir. 1972), cert. den., 407 U.S. 922, 92 S.Ct. 2467, 32 L.Ed.2d 808, the court held it was not error to deny the transcript where it appeared that appellant was given the right to have the reporter's notes read at the second trial and defense counsel had available a transcript of the testimony of three key government witnesses.

In the federal courts, failure to timely request a free transcript may waive the right, *United States v. Hibler*, 463 F.2d 455 (9th Cir. 1972), and under certain circumstances failure to provide a transcript can be harmless error. *Martin v. Rose*, 525 F.2d 111 (6th Cir. 1975).

State courts have reached varying results depending on the particular fact situations.

Denying a motion to make the reporters available with their notes, on the grounds that the defendant would have to make his own arrangements, was held to be reversible error. *State v. Williams*, 84 Wash.2d 853, 529 P.2d 1088 (1975). Relying on the defendant's memory is an inadequate alternative, as is having the court reporter in the courtroom at the second trial for impeachment purposes. Furthermore, it is unlikely that court reporters from an independent reporting service would have read back their notes well in advance without payment of a fee. *State v. Arrington*, 42 Ohio St.2d 114, 326 N.E.2d 667 (1975).

In *People v. Hosner*, 15 Cal.3d 60, 123 Cal.Rptr. 381, 538 P.2d 1141 (1975) the California Supreme Court stated that under *Britt* the defendant had the benefit of a presumption that he needed the requested transcript for an effective defense and that the burden was upon the prosecution to clearly establish the contrary. The court noted that the *possibility* of counsel securing an ad hoc oral transcription of the reporter's notes failed as a matter of law to prevail over the defendant's presumptive need for a full transcript of his first trial.

In *State v. Scott*, 31 Ohio St.2d 1, 285 N.E.2d 344 (1972) the court held there was no error in denying a transcript of the first trial where defense counsel conceded, as in *Britt*, that if he had made an informal request, the court reporter would have read back the notes of the first trial.

The state courts also require that a motion for the transcript be timely made. *State v. Sanchez*, 86 N.M. 68, 519 P.2d 304 (App.1974); *State v. Ambus*, 522 S.W.2d 306 (Mo.App.1975); *State v. Johnson*, 261 La. 620, 260 So.2d 645 (1972), cert. den., 409 U.S. 1085, 93 S.Ct. 691, 34 L.Ed.2d 672.

The State of Kansas has had several cases on this subject. In *State v. Kelley*, 209 Kan. 699, 498 P.2d 87 (1972) the court held there was no denial of equal protection

---

1. We see no substantial difference between a tape recording and reading back the court reporter's notes which was held to be adequate in *Britt*. New Mexico has held contrary to *Jonas*. See *State ex rel. Moreno v. Floyd*, 85 N.M. 699, 516 P.2d 670 (1973).

where defense counsel acknowledged to the trial court that he remembered the testimony from the first trial and the trial court specifically indicated that full access to the reporter's notes were available when needed at trial. In *State v. Jordan*, 220 Kan. 110, 551 P.2d 773 (1976) it was held that the failure to provide the defendant with a free transcript of his first trial did not deny him equal protection because (1) the court reporter was generally available for consultation before and during the second trial, (2) the defendant did not explore other alternatives, for example, the prosecution had a copy of the transcript which might have been shared upon request and order of the court,[2] (3) defendant made no showing that he was hampered in conducting his defense, (4) he had a copy of the witness' testimony at the preliminary hearing and did not contend he was surprised by changes in their testimony and (5) defendant showed no prejudice.[3]

In *State v. Wheeler*, 215 Kan. 94, 523 P.2d 722 (1974) the court held that since the court reporter at the first trial was the official court reporter, his availability might be presumed. The same presumption was apparently used in *State v. McVeigh*, 213 Kan. 432, 516 P.2d 918 (1973) since the court there stated that the appellant would have access to the court reporter who had recorded the earlier testimony. (How the court reached its conclusion is not stated in the opinion.)

In *State v. Julian*, 212 Kan. 169, 509 P.2d 1123 (1973) the appellant had sought a transcript of the preliminary hearing for cross-examination purposes. The trial court denied the motion but suggested that the court reporter could be called as a witness at the time of the trial. The appellate court held that since appellant had not availed himself of this alternative at trial, there was no error.

Louisiana has had occasion to speak on this subject. In *State v. Petta*, La., 354 So.2d 563 (1978) the issue was whether the defendant was denied equal protection by the trial court's failure to provide him with a transcript of a prior trial. The appellate court held that there was no error. The defendant himself cross-examined the witnesses and it was apparent that he remembered the testimony and did well in his cross-examination on the discrepancies. Furthermore, it appeared to the appellate court that the discrepancies were not of a significant nature.

Finally, in *State v. Gibbs*, 29 N.C.App. 647, 225 S.E.2d 837 (1976) the defendant moved for a free transcript of the first trial so that he could use it to impeach witnesses and prepare his defense at the retrial. His request was denied. The appellate court affirmed. On appeal defense counsel acknowledged that the court reporter at the first trial was regularly assigned to that court and was assigned to report the second trial. The appellate court thus concluded that the reporter was available as a witness and that any suspected inconsistencies in the prosecution's evidence could have been developed by defense counsel calling the reporter as a witness and having him read testimony from the earlier trial. It also noted that defense counsel was the same for both trials, that the two trials were less than a month apart and that the memory of the defendant and his counsel combined with the court reporter's availability as a witness furnished an adequate substitute for a transcript. The court further observed that the record did not disclose any discrepancies:

"The record does not disclose discrepancies in the testimony of either Hamlin or Miss Martin which defendant sought to contradict. The witnesses admitted testifying in the first trial. We find no instances nor do counsel suggest in their brief any instances when the witnesses were questioned as to any discrepancy of testimony material to the defense. It

---

2. Does this satisfy the burden of proof which the court in *Britt* said rested upon the state?

3. In *People v. Hosner*, supra, it was held that prejudice was presumed.

appears from the questioning that counsel's memory from and notes taken at the former trial served as an alternative substantially equivalent to a transcript. . . ." 225 S.E.2d at 838.

■ We are unable to agree with the conclusions in some of these state cases. For example we believe that *State v. Gibbs*, supra, although presumably relying on *Britt*, is contrary to the conclusion of the court in *Britt*. The Kansas cases of *Jordan, Wheeler* and *McVeigh* also seem to be inconsistent with *Britt* in that they place the burden of proof upon the defendant. That is obvious in *Wheeler* when it states that the availability of the court reporter would be presumed. This presumption is no more than a device for shifting the burden of proof and would be unjustifiable in this state. A.R.S. Sec. 12–223(B) states:

"Upon payment or tender of the fees therefor, he [the court reporter] shall furnish to any person a typewritten transcript of all or any part of the proceedings reported by him, and upon request, certify that such transcript is a correct and complete statement of such proceedings."

As can be seen, the court reporter is entitled to be paid for furnishing a typewritten transcript. We know of no authority, statutory or otherwise, that requires the court reporter to read back trial testimony to a defense attorney free of charge.

■ The situation here differs from *Britt* in that there was no concession that the court reporter would have read back the testimony of the first trial free of charge. In fact, there is no evidence anywhere in the record that the court reporter would have been available prior to trial to read back the testimony. As *Britt* makes clear, it is assumed that the transcript of a prior trial is valuable to the defendant and he need not show any particularized need. For some unknown reason defense counsel never requested the court reporter to read back the notes on the victim's testimony when he wanted to impeach her, although the origi-

nal court reporter was in the courtroom reporting the second trial. Instead, he kept insisting that the court provide him with a written transcript of the testimony. In *State v. McNeill*, 33 N.C.App. 317, 235 S.E.2d 274 (1977), the court seemed to treat the failure of defense counsel to utilize the reporter's notes at the second trial as an admission that the transcript was not needed for an effective defense at a second trial. We do not have that here. It is obvious that defense counsel thought the victim's testimony was inconsistent and that he desired to impeach her.

■ We do not find that the state carried its burden of proof by showing that appellant had an alternative device which was the equivalent of the transcript available to him *prior* to trial. The result in this case depended upon whether the jury believed appellant or the victim. We are unable to say that the evidence was so overwhelming that the trial court's failure to furnish the transcript was harmless beyond a reasonable doubt. We therefore reverse.

■ Since this case must be retried we will answer appellant's second question. At the trial the state was allowed to introduce into evidence, without objection, a tape recording of an interview of the defendant by Det. Middleton. Subsequently the state moved to introduce into evidence a written transcription of the tape recording. The court admitted it over appellant's objection. Appellant claims this was error. We do not agree. It is well recognized that accurate typewritten transcripts of sound recordings, used contemporaneously with the admission of the recordings into evidence, are admissible to assist the jury in following the recordings while they are being played. *United States v. Turner*, 528 F.2d 143 (9th Cir. 1975), cert. den., 423 U.S. 996, 96 S.Ct. 426, 46 L.Ed.2d 371; *State v. Dante*, 25 Ariz.App. 150, 541 P.2d 941 (1975), cert. den. 429 U.S. 853, 97 S.Ct. 146, 50 L.Ed.2d 128.

Reversed and remanded for a new trial.

RICHMOND, C. J., and HATHAWAY, J., concur.