725 P.2d 752

**STATE of Arizona, ex rel., Robert K. CORBIN, Attorney General, Plaintiff/Appellee,**

v.

**UNITED ENERGY CORPORATION OF AMERICA, an Arizona corporation; Robert Payne and Carol Payne and Walter Payne, Defendants/Appellants.**

No. 1 CA–CIV 7870.

Court of Appeals of Arizona, Division 1, Department A.

May 22, 1986.

Review Denied Sept. 24, 1986.

Robert K. Corbin, Atty. Gen. by Patrick M. Murphy, Chief Counsel, Financial Fraud Div., Karen A. Mullins, Thomas McClory, Asst. Attys. Gen., Phoenix, for plaintiff/appellee.

Law Offices of Gregory D. D'Antonio by Gregory D. D'Antonio, Patricia A. Ihnat, Tucson, for defendants/appellants.

## OPINION

KLEINSCHMIDT, Judge.

This appeal is from a judgment against defendants-appellants, United Energy Corporation of America, Robert Payne and his wife, and Walter Payne, assessing penalties of $55,000 against each of the three appellants for eleven counts of the Arizona Consumer Fraud Act. We affirm.

This action was brought by the State of Arizona against the appellants and others for consumer fraud arising out of the marketing and sale of the GZ-180, a passive solar water heater. United Energy was incorporated in January 1982 for the purpose of marketing and distributing the GZ-180. Walter Payne was a shareholder of United Energy and served as president and treasurer. Robert Payne, Walter's father, served as general manager.

The GZ-180 was a product of Sun-West Solar Systems, Inc., which was a party to the action below but is not included in this appeal. The product consisted of two thirty-gallon tanks which were installed on the roof of a home and then connected with the home's conventional water heater. The water was heated on the roof by the sun and then either stored in the conventional heater, or, through the use of a by-pass valve, routed directly into the home. Testimony at trial indicated that the GZ-180 was designed to be a supplement to a home's conventional water-heating system. Its basic function was to pre-heat the water that entered the conventional heater thereby requiring less electricity or gas to heat the water to the desired temperature.

The Paynes and United Energy employed a team of salesmen for home solicitation. The salesmen were solicited through newspaper advertisements calling for people to take energy surveys. Those people who answered the advertisements and were interested in the program were required to take part in a three-day training session. These sessions were first conducted by the Paynes and then by Jerry Lowenthal, another defendant below, with the Paynes taking part in the sessions in a limited manner. One of the participants of the training sessions tape recorded the proceedings. Excerpts of those tapes were played to the jury at trial.

The surveyors/salesmen visited the homes of consumers who contacted United Energy, usually answering fliers offering a free gift. During the course of the "survey," the salesman would reveal that a limited number of GZ-180's were being test marketed in the Phoenix metropolitan area. From that point, the "survey" concentrated on the sale of a GZ-180 to the consumer.

At trial, the state alleged that the sales program used to sell the GZ-180 employed up to nine deceptive practices:

1. The defendants represented to consumers that they were advertising repre-

sentatives conducting a marketing survey when, in fact, they were salesmen intending to sell the GZ180 to the consumers.

2. The defendants represented to consumers that a discounted price was available through a special advertising program which was only available to a limited number of consumers residing in certain geographic areas. They further represented that this program was only available if the consumer agreed to do such things as write a testimonial letter and provide them with copies of their utility bills. In actuality, no such special program existed and the discounted price was offered to all consumers who responded to the fliers without regard to geographic location or the writing of such letters and other items.

3. The defendants represented to consumers that the GZ180 could be purchased at no out-of-pocket cost when such was not true.

4. The defendants failed to subtract the reasonable market value of non-solar items from the total package price before calculating tax credits, resulting in an inflated tax credit figure. ·

5. The defendants misrepresented the amount of monthly utility savings a consumer could expect after the GZ180 was installed.

6. The defendants misrepresented the temperature which the water would reach in the GZ180 and its capacity to provide adequate hot water while the consumers' back-up unit was shut off.

7. The defendants installed the GZ180 within the statutory three day cancellation period, thereby inhibiting consumers from cancelling the purchase contracts.

8. The defendants misrepresented the fact that a lien would be placed on consumers' homes as a result of their purchase of the GZ180 and that the loans obtained for purchasing the GZ180s could be refinanced with the tax credit refund.

9. The defendants falsified a credit application in connection with securing financing for the GZ180.

There was evidence at trial supporting each of the state's allegations.

During trial, the state was pursuing civil penalties as well as an order for restitution for all sales of the GZ–180. A total of eleven consumers testified at trial; the jury found that the appellants had each committed eleven violations of the consumer fraud act. The jury assessed the maximum civil penalty of $5,000 per violation against each of the appellants, for a total of $55,000 against each appellant. The trial judge eventually denied the request for restitution. After the denial of several post-trial motions, the Paynes and United Energy appealed to this court.

I

*Multiple Penalties*

Appellants' first claim is that the trial court erred in imposing three $55,000 penalties for the eleven violations. They claim, that as entities under a single control, only one $55,000 penalty should have been imposed against United Energy. Alternatively, they claim that the one penalty should have been imposed against the corporation and the individual defendants jointly and severally.

The applicable statute, A.R.S. § 44–1531(A) states:

If a court finds that any person is wilfully using or has wilfully used any act or practice declared unlawful by § 44–1522 of this article, the attorney general upon petition to the court may recover on behalf of the state a civil penalty of not more than five thousand dollars per violation.

The parties disagree on the meaning of this statute. The state argues that penalties of up to $5,000 may be imposed upon all parties involved in a consumer fraud violation; appellants contend that $5,000 is the limit the state can collect on one violation regardless of the number of participants in the violation.

When construing legislation, a court must determine and give effect to legislative intent behind the statute. *Kriz v. Buckeye Petroleum Co.*, 145 Ariz. 374, 377, 701 P.2d 1182, 1185 (1985). Where the words of the statute fail to reveal that intent, as is the case with this statute, and the legislative history does not shed light on the issue, a court must read the statute as a whole, looking to its subject matter, effects, consequences, reason, and spirit. *Kriz*, 145 Ariz. at 377, 701 P.2d at 1185. Further, the court should construe the statute so as to give it a fair and sensible meaning. *City of Phoenix v. Superior Court of Maricopa County*, 139 Ariz. 175, 178, 677 P.2d 1283, 1286 (1984). We find that the state's construction of the statute allowing for multiple penalties best fulfills the goals found in these rules of statutory construction.

The Arizona Consumer Fraud Act is a broadly drafted remedial provision designed to eliminate unlawful practices in merchant-consumer transactions. *Madsen v. Western American Mortgage Co.*, 143 Ariz. 614, 618, 694 P.2d 1228, 1232 (App. 1985). Allowing courts the flexibility of imposing a penalty of up to $5,000 per person per violation will certainly have a greater deterrent effect on consumer fraud than will diluting the penalty by limiting it to only $5,000 per violation, regardless of the number of participants in the fraud. This interpretation of the statute is not unduly harsh; the $5,000 penalty is a maximum limit. The trial court may adjust the penalty imposed on each participant in the fraud as the circumstances warrant. Thus, every wilful participant in a consumer fraud is not automatically assessed the maximum penalty.

■ Appellants' argument is based in large part on 15 U.S.C. § 45, the federal unfair competition statute, as interpreted in *United States v. J.B. Williams*, 498 F.2d 414 (2d Cir.1974), and on A.R.S. § 44–1522(B), which states that 15 U.S.C. § 45 may be used as a guide for interpreting the Arizona consumer fraud statutes. In *J.B. Williams*, the court held that only a single penalty should be assessed under 15 U.S.C. § 45(*l*) for a violation of an order to cease and desist deceptive advertising by a corporation and its subsidiary.

Appellants' analysis is flawed in several aspects. Initially, A.R.S. § 44–1522(B) states specifically that 15 U.S.C. § 45 may be used as a guide in interpreting A.R.S. § 44–1522(A), which defines consumer fraud in Arizona. Thus, our legislature has stated directly only that the federal statute should be used in determining what constitutes consumer fraud; any further interpretive purpose for which the federal statute should be used in Arizona is speculative.

Second, and more significant, the *J.B. Williams* case is so factually dissimilar from this case as to be of questionable help. In *J.B. Williams*, the J.B. Williams Company and the Parkson Advertising Agency were ordered by the Federal Trade Commission to cease their advertising of Geritol as a probable remedy for tiredness. The FTC brought suit against Williams and Parkson for violations of the order under 15 U.S.C. § 45(*l*). The trial court imposed penalties of $456,000 against Williams and $356,000 against Parkson. *United States v. J.B. Williams, Inc.*, 354 F.Supp. 521 (S.D.N.Y.1973).

■ The Second Circuit held that penalties could not be assessed against both companies. The court pointed out that Parkson was wholly owned by Williams stockholders and that ninety-five percent of Parkson's business came from Williams. After examining the circumstances of the case, the court indicated that the companies should be regarded as one legal entity and should not be penalized twice.

The facts in the present case are completely different. Here, the parties are two individuals and a corporation. Robert and Walter Payne cannot claim to have had their entities merged into United Energy, and thus cannot insist upon a single penalty becuase they are a single entity.

Appellants rely heavily on the following statements made by the court in *J.B. Williams:*

It is human beings who cause violations of cease and desist orders, but no one suggests that § 5(*l*) [15 U.S.C. § 45(*l*)] contemplates a separate penalty against every person who had a hand in the offending commercials. What Congress intended was a single penalty for entities under a single control. Under the district court's theory, if Williams had had five Parksons, each operating in a different region, there could have been a sextuple penalty for what in every practical sense was conduct by a single corporation.

*J.B. Williams,* 498 F.2d at 437.

This quotation, as does the entire case, gives great significance to the court's view of the two corporations as a single entity. Again, that factor is not present in this case. Further, 15 U.S.C. § 45(*l*) is not the statute which most closely parallels A.R.S. § 44–1531. 15 U.S.C. § 45(*l*), interpreted in *J.B. Williams,* is the federal statute which prescribes penalties for violations of cease and desist orders issued under the federal unfair trade statutes. That provision most closely resembles A.R.S. § 44–1532, which allows for penalties for violations of injunctions issued pursuant to the Arizona Consumer Fraud Act.

The federal statute which most closely parallels A.R.S. § 44–1531, the statute we deal with here, is 15 U.S.C. § 45(m)(1)(A). It reads:

The Commission may commence a civil action to recover a civil penalty ... against any person, partnership or corporation which violates any rule under this Act respecting unfair or deceptive acts ... with actual knowledge or knowledge fairly implied.... In such action, such person, partnership or corporation shall be liable for a civil penalty of not more than $10,000 for each violation.

At least one federal court has indicated that corporate officers may be held liable under the Fair Debt Collections Practices Act, 15 U.S.C. § 45(m)(1)(A) if liability can be imposed under principles of common law tort and agency. *United States v. ACB Sales & Service, Inc.,* 590 F.Supp. 561, 575 (D.Ariz.1984).

■ A significant difference between A.R.S. § 44–1531/15 U.S.C. § 45(m)(1)(A) and A.R.S. § 44–1532/15 U.S.C. § 45(*l*) is that A.R.S. 44–1531 and 15 U.S.C. § 45(m)(1)(A) require that before penalties are imposed, the party to the action must be found to have knowingly violated the acts, thus negating the circuit court's concern in *J.B. Williams* that "every person who had a hand in the offending commercials" would be assessed penalties. Thus, under our interpretation of A.R.S. § 44–1531, each person who wilfully participates in consumer fraud may be assessed a maximum penalty of $5,000 per violation. We feel that this outcome is reasonable.

■ Appellants also argue that this interpretation of A.R.S. § 44–1531 ignores United Energy's status as a corporation. They state that a corporation which acts through its officers and employees is liable for consumer fraud violations resulting from those acts, but that the officers and employees cannot be held responsible for acts done within the scope of their employment. Since a corporation can only act through its agents, the Paynes equate their actions with United Energy's and conclude that by imposing liability upon them personally, the court ignored the corporate screen provided by United Energy.

To the contrary, we feel that by imposing penalties on all three parties, the court recognized United Energy's status as a legal entity. Appellants seem to feel that the acts for which United Energy was held liable are identical to those acts for which the Paynes were held liable. Appellants ignore the possibility that United Energy was held liable for the acts committed by its other agents. The jury was properly instructed concerning a corporation's liability for the acts of its agents and the circumstances under which an individual becomes a corporation's agent. The evidence in this case is such that the jury could have found

United Energy responsible for eleven counts of consumer fraud with or without the actions of the Paynes.

But of more importance, as to the liability imposed upon the Paynes, they are not correct in asserting that the general principle that an officer of a corporation is not personally liable for acts done within the scope of his employment will shield such officers from responsibility for fraudulent acts. "It is clearly established that a director or officer of a corporation is individually liable for fraudulent acts or false representations of his own or in which he participates, even though his action in such respects may be in furtherance of the corporate business." 18B Am.Jur.2d, *Corporations* § 1882 at 730 (1985). Thus, there was nothing wrong with holding the Paynes individually liable for their fraudulent acts.

The analysis applied by a California court in *People v. Bestline Products, Inc.*, 61 Cal.App.3d 879, 132 Cal.Rptr. 767 (1976), is also applicable to this case. That court faced the question of the propriety of imposing multiple penalties on corporate and other defendants for violations of California's Business and Professions Code, specifically misrepresentation, nondisclosure, and operation of a chain scheme. The court stated:

> The court made no finding even remotely suggesting that vicarious liability was imposed. There is no finding that distributors made any of the misrepresentations as agents of the defendants. Instead, it was found that, 'All of the defendants, corporate and individual, planned and participated in and furthered a common scheme by means of false, misleading, deceptive and fraudulent representations to induce members of the public to become Direct and General Distributors of Bestline Products, Inc.' In addition, each of the defendants was found to have directly participated in the making of such representations in that 'each did disseminate or cause to be disseminated' said misrepresentations.

*Bestline,* 61 Cal.App.3d at 918, 132 Cal. Rptr. at 792.

■ Considering the evidence in this case and the instructions given to the jury, the jury could have found, as did the court in *Bestline,* that all three appellants had schemed together in disseminating or causing the dissemination of misrepresentations. Thus, the imposition of three separate penalties was not error.

## II

### *Wilfullness*

Under the Arizona Consumer Fraud Act, a finding that the deceptive acts in question were done wilfully is required before civil penalties may be imposed. A.R.S. § 44–1531(A). A "wilful violation" occurs "when the party committing the violation knew or should have known that his conduct was a violation of [the act]." A.R.S. § 44–1531(B). Appellants complain that the jury was not instructed that imposition of civil penalties required a finding of wilfullness. The record establishes that appellants' assertion is incorrect. The jury was clearly and adequately instructed on the definition of "wilfullness" and its significance in imposing civil penalties.

■ Appellants also complain that the evidence was insufficient to support a finding of wilfullness on two of the violations alleged by the state: representations concerning the GZ–180's performance capabilities and representations concerning the amount of tax credits available.

Appellants claim that the manufacturer of the GZ–180 had not conducted performance tests on the unit and that thus the Paynes and United Energy had relied on information provided by Sun-West in its representation to consumers. This fact, they claim, establishes that they did not wilfully misrepresent the performance capabilities of the GZ–180.

Appellants ignore considerable testimony concerning the complaints they received throughout the marketing of the GZ–180 that the machine did not perform as promised. The evidence presented was suffi-

cient for the jury to have concluded that appellants knew or should have known that the performance representations were false.

▉▉ Appellants contend that the misrepresentations concerning the tax credits were a result of the confusing tax laws and reliance on Sun-West's calculations. Appellants again ignore the conflicting testimony which indicated that the relevant sections of the tax code were not confusing and that they should have known that the tax information was false.

▉▉ Regardless of the weight of the evidence, however, appellants have not established that they would be entitled to a reversal had the evidence been insufficient to establish wilfullness on these two issues. As the state correctly points out, the jury rendered a general verdict. At trial eleven consumers testified, and the state alleged that each sales presentation contained at least one of nine possible misrepresentations. The judge ruled that there could be only one violation of the consumer fraud act for each consumer, regardless of the number of misrepresentations made to each consumer.[1] The jury found appellants responsible for eleven violations of the consumer fraud act, one violation for every consumer who testified. Because no special interrogatories were requested, there is no record as to which representations the jury found to be consumer fraud in each sales presentation. Where no special interrogatories are requested and several counts are submitted to the jury, the verdict must be upheld if evidence of one count is sufficient to sustain the verdict. *Reese v. Cradit,* 12 Ariz.App. 233, 238, 469 P.2d 467, 472 (1970). Since the state presented evidence at trial of nine types of misrepresentations, refuting the wilfullness of only a few of those would not entitle appellants to a reversal as long as there was evidence presented of the wilfullness of one type of misrepresentation to each consumer.

1. The state contends that each misrepresentation could constitute a violation of the act and that the number of consumers should not limit

## III

### *Actions Not Constituting Fraud*

Appellants also argue that the trial court erred in allowing the state to present evidence concerning United Energy's policy of installing the GZ–180 within three days of sale and concerning the miscalculation of tax credits that were available to the purchasers of the solar equipment. According to appellants, neither of these can amount to actionable fraud in Arizona.

Again, as discussed in the previous section, appellants do not explain how, even if we were to accept their argument, these supposed errors would warrant reversal when their argument would eliminate only two of the nine grounds of alleged fraud and no special interrogatories were requested. Nevertheless, appellants' arguments fail on the merits as well:

### A. *Installation.*

Arizona's Home Solicitations and Referral Sales Act, A.R.S. §§ 44–5001, *et seq.,* allows consumers a three-day cancellation period for sales solicited in the home, A.R.S. § 44–5002. Appellants claim that because this act contemplates installation of goods during the three-day cancellation period, installation during the three-day period cannot constitute fraud.

A Massachusetts court faced a similar argument in *Schubach v. Household Finance Corp.,* 375 Mass. 133, 376 N.E.2d 140 (1978). In that case, a collection company was regularly obtaining default judgments against debtors by suing in inconvenient forums. When faced with charges under the Massachusetts Consumer Protection Act, the company defended by claiming that its actions were contemplated by the commonwealth's venue statutes. The court stated, "We reject the argument that an act or practice which is authorized by statute can never be an unfair or deceptive

the number of violations. They do not, however, appeal the trial judge's decision on this matter.

act...." 375 Mass. at 137–38, 376 N.E.2d at 142.

■ We agree with the Massachusetts Supreme Judicial Court that, depending upon the circumstances of a particular case, an act which appears to be within the bounds of one statute may be fraudulent or deceptive. Such is the case here. While the Arizona Home Solicitation and Referral Sales Act clearly contemplates delivery of goods within the cancellation period, A.R.S. § 44–5007, under the circumstances of this case, where there was evidence that the quick installation policy was specifically designed to inhibit cancellation, that the salesmen were instructed to inform consumers that the cancellation period was only for "those folks whose signatures just don't mean a thing" and that the installation required cutting a hole in the roof of the consumer's home, the jury could have found that this quick installation scheme was a wilful violation of the consumer fraud act.

### B. *Tax Credits.*

■ Appellants contend that the misstatements concerning the amount of tax credit that was available to the consumers as purchasers of solar energy equipment were representations of law and are thus not actionable as fraud. Appellants rely on *Pleasants v. Home Federal Savings & Loan Ass'n*, 116 Ariz. 319, 569 P.2d 261 (App.1977), where the failure to inform plaintiffs of a court decision was held to be inactionable as a representation of law.

This case, however, is much more similar to *Echols v. Beauty Built Homes, Inc.*, 132 Ariz. 498, 647 P.2d 629 (1982), where our supreme court allowed an action for fraud in a situation in which a developer informed prospective home purchasers that they would be eligible for tax credits for purchasing a particular home when in fact they were not eligible. In the *Echols* case, as in this case, the basis for the fraud might be viewed as a misrepresentation as to the status of the law or as a misrepresentation of the facts to be applied.

Appellants attempt to distinguish *Echols* by stating that in *Echols*, the developer accurately represented the tax code, but misrepresented the applicable facts. We disagree with appellants' reading of *Echols*. The facts state only that "the plaintiffs [were led] ... to believe that a federal tax credit would be available on the purchase of their homes." *Echols*, 132 Ariz. at 499, 647 P.2d at 630. While one of the misrepresentations alleged had to do with the date that construction began, vis-a-vis the effective date of the tax provision, the opinion does not specify if that was the basic misrepresentation, but only states that it was represented that the credits were available. Similarly, in this case, the consumers were simply given a figure which represented the tax credit that was supposedly available to them. We, as did the supreme court in *Echols*, hold that under these circumstances an action for fraud was permissible. *See also Barnes v. Lopez*, 25 Ariz.App. 477, 544 P.2d 694 (1976).

### IV

### *Passion and Prejudice*

Appellants' final complaint is that the jury was prejudiced against them by the admission of certain evidence and by the conduct of their own counsel and that the jury verdict was a result of this passion and prejudice. A verdict must be set aside where it is clearly the result of passion or prejudice and without any support in the evidence. *Zier v. Shamrock Dairy of Phoenix*, 4 Ariz.App. 382, 384, 420 P.2d 954, 957 (1966). We turn now to appellants' specific complaints.

### A. *Restitution and Conduct of Counsel.*

■ During trial, the state sought an order for restitution as well as civil penalties. Restitution, an equitable remedy, was for the judge to decide while civil penalties were left to the jury. Appellants contend that restitution is not an available remedy under the Arizona Consumer Fraud Act. The trial judge eventually denied the state's request for restitution, but because

**54**

of the severity of the penalty that would have resulted had it been granted, appellants claim that their trial counsel "was forced to conduct vigorous, hostile, aggressive and thorough cross-examination of each of the state's consumer witnesses" which led to "an extremely outraged and antagonized jury."

We decline to decide this issue on the availability of restitution as a remedy for consumer fraud in Arizona. Restitution was not granted in this case, and appellants' only interest in this issue's resolution is through its bootstrapped connection to the passion and prejudice issue.

Appellants' argument fails on other grounds. Appellants have cited no evidence which was admitted for the restitution action which would not have been admitted for the civil penalties action. Thus, they cannot claim that the jury was impassioned by improperly admitted evidence. Nor, in reviewing the record do we think that there was much danger that counsel's cross-examination inflamed the jury.

### B. *Tape Recordings and Transcripts.*

■ At trial, tape recordings of a United Energy sales training session was played for the jury. Transcripts of those recordings were also admitted into evidence. Appellants claim they were prejudiced by the cumulative nature of admitting both the tapes and the transcripts as well as by the language used at the training sessions which was often vulgar and profane.

In their opening brief, appellants complain that the admission of the *transcripts* was cumulative evidence. In their reply brief, appellants seemingly concede that the state is correct in asserting that transcripts may be used with tapes to aide the jury, but complain that the *tapes* were cumulative and added nothing to the transcripts. The record indicates that the tape recordings were played prior to the admission of the transcripts. We agree with the state that the use of transcripts in conjunction with tape recordings in this case was not error. *See State v. Tomlinson,* 121 Ariz. 313, 319, 589 P.2d 1345, 1351 (App. 1978).

■ Admission of this evidence without deletion of the profanity did not constitute reversible error. Appellants do not cite any part of the record where they objected to the evidence on this basis or where they attempted to have the vulgar language deleted, nor have they cited any case in which profane language on a tape recording constituted reversible error. There is no error.

### C. *Installation and Tax Credits.*

The appellants made a separate contention that since the quick installation and the miscalculation of tax credits could not be the basis for fraud that it was error to admit evidence on these points. Our earlier resolution of the substantive arguments negates the appellants' contentions as to the admissibility of the evidence.

Affirmed.

GREER and MEYERSON, JJ., concur.