STATE OF HAWAI'I, by **PHILIP DOI**, as Executive Director of **THE OFFICE OF CONSUMER PROTECTION**, Plaintiff–Appellee, Cross–Appellant, v. **H. E. "BUD" SHASTEEN** and **HAWAI'IAN IMPROVEMENT CORP.**, a Hawai'ian corporation, Defendants–Appellants, Cross–Appellees, and **JOHN DOES 1–10; DOE CORPORATIONS 1–10; DOE PARTNERSHIPS 1–10;** and **DOE ENTITIES 1–10**, Defendants

NO. 15083

(CIV. NO. 88–0805)

MARCH 4, 1992

BURNS, C.J., HEEN, J., AND CIRCUIT JUDGE HEELY, ASSIGNED BY REASON OF VACANCY

OPINION OF THE COURT BY BURNS, C.J.

Defendants Hawai'ian Improvement Corp. (HIC), a Hawai'i corporation, and H. E. "Bud" Shasteen (Shasteen), HIC's president and owner, appeal the circuit court's December 14, 1990 judgment as to Defendants H. E. "Bud" Shasteen and Hawai'ian Improvement Corp. (December 14, 1990 Judgment). Shasteen and HIC contend that the evidence does not support the conclusion in the December 14, 1990 Judgment that they violated Hawai'i Revised Statutes (HRS) § 480–2 (Supp. 1990) four times. We conclude that the evidence supports the conclusion in the December 14, 1990 Judgment.

Plaintiff State of Hawai'i Office of Consumer Protection (OCP) cross–appeals, contending that the circuit court erred (1) in levying civil penalties against Shasteen and HIC "jointly" instead of "individually" and (2) in failing to conclude that Shasteen and HIC violated HRS § 480–2 thirty–four or more additional times and to impose civil fines on Shasteen and HIC for these additional violations. We agree with contention (1) and disagree with contention (2).

I.

HRS § 480–2 prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]" On March 14, 1988, OCP filed a complaint against HIC and Shasteen. The complaint alleged that:

1. On October 6, 1986, Shasteen and HIC published the following advertisement in the Honolulu Advertiser:

### PUBLIC WARNING: BETTER BUSINESS BUREAU & CONSUMER PROTECTION ADVISE

Get Bids before you buy anything; Especially Siding.

I can save you hundreds, if not thousands of dollars. Salesmen make big commissions, you deal directly with me—the president & owner—no salesman involved. Guaranteed superior siding from the oldest contractor in Hawai'i and *lowest prices.*

You won't know unless you have other prices. Please get other bids, *then* call me. I'll guarantee the lowest price or I'll pay $200.00 towards the purchase of siding from any other contractor.

H.E. "Bud" SHASTEEN (SIGNED)
"VINYL IS FINAL"
PRESIDENT HAWAI'IAN IMPROVEMENT CORP.
GENERAL CONTRACTOR'S LIC. BC4385
PHONE 537-2886

2. Essentially the same advertisement was published in the Honolulu Star–Bulletin on June 26, 1987; and

3. On March 2 and 4, 1988, Shasteen and HIC broadcast a television commercial, the audio portion of which stated as follows:

Announcer: Public Warning. Better Business Bureau and Consumer Protection advise get bids before buying.

Shasteen: Would you throw a thousand dollars away? Two thousand? Many will do this when buying siding. Get bids then call me. My guarantee, the lowest price when *siding your house* or I'll pay $200 toward the purchase of siding from any other contractor. I'll save you money. Guaranteed. Also free dinner at Shasteen's

restaurant.    Call  Bud  Shasteen  Vinyl  is  Final  at 537–2886.

The complaint prayed for an injunction and a $10,000 civil fine against each defendant for each violation of HRS § 480–2. During the trial, and without objection, OCP introduced evidence of thirty–four or more other publication violations in addition to the four alleged in the complaint.

On September 4, 1990, immediately after closing arguments, the circuit court commented on the evidence of the other thirty–four or more advertisements as follows:

> THE COURT: The Court has mentioned the fact and questioned [OCP] as to whether or not there are forty–three different offenses alleged in the complaint.
>
> $* * *$
>
> I told you it was your case, do what you want. No real motion was made. So the Court is only going to consider four violations that occurred.

The circuit court orally ruled in favor of OCP, granted an injunction, and imposed civil fines of $500 for the October 6, 1986 advertisement and $2,000 for the June 26, 1987 and the March 2 and 4, 1988 advertisements because they occurred after OCP's November 17, 1986 cease and desist letter. The total fine was $6,500.

On September 21, 1990, the circuit court orally denied OCP's September 17, 1990 post–oral decision motion to amend its pleadings to conform to the evidence by adding and seeking civil penalties for thirty–four additional advertisements. On November 19, 1990, the circuit court entered its Order Denying Plaintiff State of Hawai'i's Motion to Amend Pleadings to Conform to Evidence at Trial and to Reconsider Oral Findings and Conclusions Filed September 17, 1990 (November 19, 1990 Order).

The circuit court entered its Findings of Fact (FOF) and Conclusions of Law (COL) on October 31, 1990. COL Nos. 3 and 5 state as follows:

3. The Court on two separate occasions prior to rendering its oral judgment called [OCP's] attention to the fact that its pleading was less than the evidence presented and [OCP] neglected to amend its pleading despite the admonition of the Court and only after the rendition of the oral judgment did it move to amend its pleading to conform to the evidence therefore [OCP] is estopped from amending its pleading.

5. Shasteen and HIC were each engaged in unfair and deceptive acts or practices in violation of Secs. 480–2 and 481–3(a) of the Hawai'i Revised Statutes.

The circuit court's December 14, 1990 Judgment concluded that Shasteen and HIC "are jointly and severally liable to [OCP] for civil penalties pursuant to Haw. Rev. Stat. § 480–3.1 in the amount of $6,500.00" and permanently enjoined Shasteen and HIC from publishing advertisements that

a. Cause the likelihood of confusion or misunderstanding that a governmental agency or organization has issued a public warning, when none was issued;

b. Cause the likelihood of confusion or misunderstanding that a government agency or organization has endorsed or sponsored [Shasteen and HIC], when none had;

c. Cause the likelihood of confusion or misunderstanding that a governmental agency or organization was affiliated, connected or associated with [Shasteen and HIC], when that was not true;

d. Falsely represent that a governmental agency or organization is the source of or has sponsored [Shasteen's and HIC's] advertisement;

e. Represent [Shasteen and HIC] as the "oldest contractor," when [Shasteen and HIC] are not the "oldest contractor," and

    f.  Make any false or misleading representations of
fact regarding any industry, group or company.

## II.

    In their appeal, Shasteen and HIC challenge twenty–four of
the circuit court's thirty–four FOF and seven of the court's nine
COL and essentially contend that their advertisements did not vio-
late HRS § 480–2 (Supp. 1990) and § 481A–3(a) (1985).  Upon a
review of the record, we conclude that the challenged FOF are not
clearly erroneous and that the FOF validate the challenged COL.
Therefore, we conclude that Shasteen's and HIC's appeal is with-
out merit.

## III.

    In its cross–appeal, OCP contends that the other thirty–four or
more publication violations were tried with the implied consent of
the parties and, therefore, the circuit court violated Hawai'i Rules
of Civil Procedure Rule 15(b) when it entered its November 19,
1990 Order.  In OCP's words,

> [t]he lower court should have determined whether there
> had been an express or implied consent to try the issues
> which had not been raised in the pleadings.  The relevant
> evidence had been received by the court without objec-
> tion and the court was required to find consent.  Once
> consent was found, the court was required to make find-
> ings on the additional violations.  [Citations omitted.]

The question is whether the issue of Shasteen's and HIC's
liability to be civilly fined for each of the thirty–four or more addi-
tional violations was tried with the implied consent of the parties.
The answer is no.

*Hamm v. Merrick*, 61 Haw. 470, 605 P.2d 499 (1980), is authority for the general rule that consent to litigate issues not raised by the pleadings will be implied from the failure to object to the introduction of evidence relevant to the unpleaded issues. In this case, however, OCP's introduction of the evidence of the thirty–four or more additional violations was insufficient to prove OCP's implied consent to litigate the issue of Shasteen's and HIC's liability for civil fines for those additional violations. OCP has not disagreed with or challenged the circuit court's statement that it expressly "questioned [OCP] as to whether or not there are forty–three different offenses alleged in the complaint" and OCP did not respond. Under those circumstances, it cannot be implied that OCP's answer was yes.

## IV.

OCP also contends that the circuit court violated HRS § 480–3.1 (Supp. 1990) when it ordered Shasteen and HIC to bear joint and several liability for one civil fine, rather than ordering Shasteen and HIC to each bear separate liability for separate civil fines. We agree with OCP.

HRS § 480–3.1 (Supp. 1990) states in relevant part as follows:

> Civil Penalty. Any person, firm, company, associa-
> tion, or corporation violating any of the provisions of sec-
> tion 480–2 shall be fined a sum of not less than $500 nor
> more than $10,000 for each violation[.]

The question is, when a court determines that a person, while acting on behalf of a corporation owned and operated by that person, violated HRS § 480–2 each time that person caused the publication of the corporation's newspaper and television advertisements, does HRS § 480–3.1 allow the circuit court the discretion to

impose for each violation one fine jointly and severally payable by the person and the person's corporation? Our answer is no.

In *United States v. J.B. Williams Co.*, 498 F.2d 414 (2d Cir. 1974), the Parkson Advertising Agency was wholly owned by the stockholders of the J. B. Williams Company and ninety–five percent of Parkson's business came from Williams. The court decided that 15 United States Code § 45(1), which requires any "person, partnership, or corporation" violating it to be assessed a civil penalty of not more than $10,000 for each violation," authorized only a single penalty for entities under a single control and that, in this context, Williams and Parkson should be regarded as one legal entity.

In *State ex rel. Corbin v. United Energy Corp. of America*, 151 Ariz. 45, 725 P.2d 752 (Ariz. App. 1986), a jury assessed identical penalties of $55,000 for eleven violations ($5,000 per violation) against (a) a corporation, (b) a man who was the corporation's part owner, president, and treasurer, and (c) the man's father, who was the corporation's general manager. The applicable statute allowed "any person" violating it to be assessed a civil penalty of "not more than five thousand dollars per violation." The court factually distinguished *Williams* and affirmed.

We also factually distinguish *Williams*. We are not dealing with a corporate parent and its corporate subsidiary. We are dealing with a man who acted for and through his corporation. In our view, HRS § 480–3.1 clearly and unambiguously required the court to civilly fine the man a minimum of $500 for each violation by the man and to civilly fine the corporation a minimum of $500 for each violation by the corporation. The facts that the man acted for the corporation and that the corporation was wholly owned, controlled, and operated by the man did not alter the facts that (1) the man and the corporation had distinct and separate legal identities and (2) the activities of each violated the prohibitions of the applicable statute. The man had his reasons for acting for and

through his corporation. The legislature had its reasons for imposing a mandatory civil fine on both the man and the corporation for and through which the man acted.

Nothing in the applicable statute, however, requires the circuit court to impose the same amount of civil fine on the man and his corporation. As noted above, the statutory civil fine for each violation is a minimum of $500 and a maximum of $10,000.

## CONCLUSION

Accordingly, we vacate the second to the last paragraph of the December 14, 1990 Judgment which imposes the $6,500 civil fine "jointly and severally" payable by defendants H. E. "Bud" Shasteen and Hawai'ian Improvement Corp., and we remand for reconsideration in the light of this opinion only the issue of the civil fines to be imposed against each defendant. In all other respects, we affirm.

*William H. Brady* and *Rory Soares Toomey* (Law Office of William H. Brady), on the briefs, for defendants–appellants, cross–appellees.

*Lorrin A. Kau*, Office of Consumer Protection, on the briefs, for plaintiff–appellee, cross–appellant.